(Slip Opinion) OCTOBER TERM, 2013 1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## RAY HALUCH GRAVEL CO. ET AL. *v.* CENTRAL PENSION FUND OF INTERNATIONAL UNION OF OPERATING ENGINEERS AND PARTICIPATING EMPLOYERS ET AL.

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT

No. 12–992.   Argued December 9, 2013—Decided January 15, 2014

Respondents, various union-affiliated benefit funds (Funds), sued petitioner Ray Haluch Gravel Co. (Haluch) in Federal District Court to collect benefits contributions required to be paid under federal law. The Funds also sought attorney's fees and costs, which were obligations under both a federal statute and the parties' collective bargaining agreement (CBA). The District Court issued an order on June 17, 2011, on the merits of the contribution claim and a separate ruling on July 25 on the Funds' motion for fees and costs. The Funds appealed both decisions on August 15. Haluch argued that the June 17 order was a final decision pursuant to 28 U. S. C. §1291, and thus, the Funds' notice of appeal was untimely since it was not filed within the Federal Rules of Appellate Procedure's 30-day deadline. The Funds disagreed, arguing that there was no final decision until July 25. The First Circuit acknowledged that an unresolved attorney's fees issue generally does not prevent judgment on the merits from being final, but held that no final decision was rendered until July 25 since the entitlement to fees and costs provided for in the CBA was an element of damages and thus part of the merits. Accordingly, the First Circuit addressed the appeal with respect to both the unpaid contributions and the fees and costs.

*Held*: The appeal of the June 17 decision was untimely. Pp. 5–13.

(a) This case has instructive similarities to *Budinich* v. *Becton Dickinson & Co.*, 486 U. S. 196. There, this Court held a district court judgment to be a "final decision" for §1291 purposes despite an

unresolved motion for statutory-based attorney's fees, noting that fee awards do not remedy the injury giving rise to the action, are often available to the defending party, and were, at common law, an element of "costs" awarded to a prevailing party, not a part of the merits judgment. *Id.*, at 200. Even if laws authorizing fees might sometimes treat them as part of the merits, considerations of "operational consistency and predictability in the overall application of §1291" favored a "uniform rule." *Id.*, at 202. Pp. 5–7.

(b) The Funds' attempts to distinguish *Budinich* fail. Pp. 7–13.

(1) Their claim that contractual attorney's fees provisions are always a measure of damages is unpersuasive, for such provisions often provide attorney's fees to prevailing defendants. More basic, *Budinich*'s uniform rule did not depend on whether the law authorizing a particular fee claim treated the fees as part of the merits, 486 U. S., at 201, and there is no reason to depart from that sound reasoning here. The operational consistency stressed in *Budinich* is not promoted by providing for different jurisdictional effect based solely on whether an asserted right to fees is based on contract or statute. Nor is predictability promoted since it is not always clear whether and to what extent a fee claim is contractual rather than statutory. The Funds urge the importance of avoiding piecemeal litigation, but the *Budinich* Court was aware of such concerns when it adopted a uniform rule, and it suffices to say that those concerns are counterbalanced by the interest in determining with promptness and clarity whether the ruling on the merits will be appealed, especially given the complexity and amount of time it may take to resolve attorney's fees claims. Furthermore, the Federal Rules of Civil Procedure provide a means to avoid a piecemeal approach in many cases. See, *e.g.*, Rules 54(d)(2), 58(e). Complex variations in statutory and contractual fee-shifting provisions also counsel against treating attorney's fees claims authorized by contract and statute differently for finality purposes. The *Budinich* rule looks solely to the character of the issue that remains open after the court has otherwise ruled on the merits. The Funds suggest that it is unclear whether *Budinich* applies where, as here, nonattorney professional fees are included in a motion for attorney's fees and costs. They are mistaken to the extent that they suggest that such fees will be claimed only where a contractual fee claim is involved. Many fee-shifting statutes authorize courts to award related litigation expenses like expert fees, see *West Virginia Univ. Hospitals, Inc.* v. *Casey*, 499 U. S. 83, 89, n. 4, and there is no apparent reason why parties or courts would find it difficult to tell that *Budinich* remains applicable where such fees are claimed and awarded incidental to attorney's fees. Pp. 7–11.

(2) The Funds' claim that fees accrued prior to the commence-

ment of litigation fall outside the scope of *Budinich* is also unpersuasive. *Budinich* referred to fees "for the litigation in question," 486 U. S., at 202, or "attributable to the case," *id.*, at 203, but this Court has observed that "some of the services performed before a lawsuit is formally commenced by the filing of a complaint are performed 'on the litigation,'" *Webb* v. *Dyer County Bd. of Ed.*, 471 U. S. 234, 243. Here, the fees for investigation, preliminary legal research, drafting of demand letters, and working on the initial complaint fit the description of standard preliminary steps toward litigation. Pp. 11–13.

695 F. 3d 1, reversed and remanded.

KENNEDY, J., delivered the opinion for a unanimous Court.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

————

No. 12–992

————

## RAY HALUCH GRAVEL COMPANY, ET AL., PETITIONERS *v.* CENTRAL PENSION FUND OF THE INTERNATIONAL UNION OF OPERATING ENGINEERS AND PARTICIPATING EMPLOYERS ET AL.

### ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT

[January 15, 2014]

JUSTICE KENNEDY delivered the opinion of the Court.

Federal courts of appeals have jurisdiction of appeals from "final decisions" of United States district courts. 28 U. S. C. §1291. In *Budinich* v. *Becton Dickinson & Co.*, 486 U. S. 196 (1988), this Court held that a decision on the merits is a "final decision" under §1291 even if the award or amount of attorney's fees for the litigation remains to be determined. The issue in this case is whether a different result obtains if the unresolved claim for attorney's fees is based on a contract rather than, or in addition to, a statute. The answer here, for purposes of §1291 and the Federal Rules of Civil Procedure, is that the result is not different. Whether the claim for attorney's fees is based on a statute, a contract, or both, the pendency of a ruling on an award for fees and costs does not prevent, as a general rule, the merits judgment from becoming final for purposes of appeal.

I

Petitioner Ray Haluch Gravel Co. (Haluch) is a land-
scape supply company.   Under a collective-bargaining
agreement (CBA) with the International Union of Operat-
ing Engineers, Local 98, Haluch was required to pay con-
tributions to union-affiliated benefit funds.   Various of
those funds are respondents here.

In 2007, respondents (Funds) commissioned an audit to
determine whether Haluch was meeting its obligations
under the CBA.   Based on the audit, the Funds demanded
additional contributions.   Haluch refused to pay, and the
Funds filed a lawsuit in the United States District Court
for the District of Massachusetts.

The Funds alleged that Haluch's failure to make the
required contributions was a violation of the Employee
Retirement Income Security Act of 1974 (ERISA) and the
Labor Management Relations Act, 1947.   The Funds also
sought attorney's and auditor's fees and costs, under
§502(g)(2)(D) of ERISA, 94 Stat. 1295, 29 U. S. C.
§1132(g)(2)(D) (providing for "reasonable attorney's fees
and costs of the action, to be paid by the defendant"),
and the CBA itself, App. to Pet. for Cert. 52a (providing
that "[a]ny costs, including legal fees, of collecting pay-
ments due these Funds shall be borne by the defaulting
Employer").

At the conclusion of a bench trial, the District Court
asked the parties to submit proposed findings of fact and
conclusions of law to allow the court "to consider both the
possibility of enforcing [a] settlement and a decision on the
merits at the same time."   Tr. 50 (Feb. 28, 2011).   These
submissions were due on March 14, 2011.   The District
Court went on to observe that "[u]nder our rules . . . if
there is a judgment for the plaintiffs, typically a motion
for attorney's fees can be filed" shortly thereafter.   *Id.*, at
51.   It also noted that, "[o]n the other hand, attorney's fees
is part of the damages potentially here."   *Ibid.*   It gave the

plaintiffs the option to offer a submission with regard to fees along with their proposed findings of fact and conclusions of law, or to "wait to see if I find in your favor and submit the fee petition later on." *Ibid.*

The Funds initially chose to submit their fee petition at the same time as their proposed findings of fact and conclusions of law, but they later changed course. They requested an extension of time to file their "request for reimbursement of attorneys' fees and costs in the above matter." Motion to Extend Time to Submit Request for Attorneys' Fees in No. 09–cv–11607–MAP (D Mass.), p. 1. The District Court agreed; and on April 4, the Funds moved "for an [o]rder awarding the total attorneys' fees and costs incurred . . . in attempting to collect this delinquency, in obtaining the audit, in protecting Plaintiffs' interests, and in protecting the interests of the participants and beneficiaries." App. 72. The motion alleged that "[t]hose fees and costs . . . amount to $143,600.44," and stated that "[d]efendants are liable for these monies pursuant to" ERISA, "and for the reasons detailed in the accompanying" affidavit. *Ibid.* The accompanying "affidavit in support of [the] application for attorneys' fees and costs," in turn, cited the parties' agreements (including the CBA, as well as related trust agreements) and §502(g)(2)(D) of ERISA. *Id.*, at 74.

As to the merits of the claim that Haluch had underpaid, on June 17, 2011, the District Court issued a memorandum and order ruling that the Funds were entitled to certain unpaid contributions, though less than had been requested. *International Union of Operating Engineers, Local 98 Health and Welfare, Pension and Annuity Funds* v. *Ray Haluch Gravel Co.,* 792 F. Supp. 2d 129 (Mass.). A judgment in favor of the Funds in the amount of $26,897.41 was issued the same day. App. to Pet. for Cert. 39a–40a. The District Court did not rule on the Funds' motion for attorney's fees and costs until July 25, 2011.

On that date it awarded $18,000 in attorney's fees, plus costs of $16,688.15, for a total award of $34,688.15. 792 F. Supp. 2d 139, 143. On August 15, 2011, the Funds appealed from both decisions. Haluch filed a cross-appeal a week later.

In the Court of Appeals Haluch argued that there had been no timely appeal from the June 17 decision on the merits. In its view, the June 17 decision was a final decision under §1291, so that notice of appeal had to be filed within 30 days thereafter, see Fed. Rule App. Proc. 4(a)(1)(A). The Funds disagreed. They argued that there was no final decision until July 25, when the District Court rendered a decision on their request for attorney's fees and costs. In their view the appeal was timely as to all issues in the case. See *Digital Equipment Corp.* v. *Desktop Direct, Inc.*, 511 U. S. 863, 868 (1994).

The Court of Appeals agreed with the Funds. 695 F. 3d 1, 7 (CA1 2012). It acknowledged this Court's holding that an unresolved issue of attorney's fees generally does not prevent judgment on the merits from being final. But it held that this rule does not "mechanically . . . apply to all claims for attorneys' fees, whatever their genesis," and that, instead, "[w]here, as here, an entitlement to attorneys' fees derives from a contract . . . the critical question is whether the claim for attorneys' fees is part of the merits." *Id.*, at 6. Interpreting the CBA in this case as "provid[ing] for the payment of attorneys' fees as an element of damages in the event of a breach," the Court of Appeals held that the June 17 decision was not final. *Ibid.* Concluding that the appeal was timely as to all issues, the Court of Appeals addressed the merits of the dispute with respect to the amount of unpaid remittances as well as the issue of fees and costs, remanding both aspects of the case to the District Court. *Id.*, at 11.

Haluch sought review here, and certiorari was granted to resolve a conflict in the Courts of Appeals over whether

and when an unresolved issue of attorney's fees based on a contract prevents a judgment on the merits from being final. 570 U. S. \_\_\_ (2013). Compare *O & G Industries, Inc.* v. *National Railroad Passenger Corporation*, 537 F. 3d 153, 167, 168, and n. 11 (CA2 2008); *United States ex rel. Familian Northwest, Inc.* v. *RG & B Contractors, Inc.*, 21 F. 3d 952, 954–955 (CA9 1994); *Continental Bank, N. A.* v. *Everett*, 964 F. 2d 701, 702–703 (CA7 1992); and *First Nationwide Bank* v. *Summer House Joint Venture*, 902 F. 2d 1197, 1199–1200 (CA5 1990), with *Carolina Power & Light Co.* v. *Dynegy Marketing & Trade*, 415 F. 3d 354, 356 (CA4 2005); *Brandon, Jones, Sandall, Zeide, Kohn, Chalal & Musso, P. A.* v. *MedPartners, Inc.*, 312 F. 3d 1349, 1355 (CA11 2002) (*per curiam*); *Gleason* v. *Norwest Mortgage, Inc.*, 243 F. 3d 130, 137–138 (CA3 2001); and *Justine Realty Co.* v. *American Nat. Can Co.*, 945 F. 2d 1044, 1047–1049 (CA8 1991). For the reasons set forth, the decision of the Court of Appeals must be reversed.

## II

Title 28 U. S. C. §1291 provides that "[t]he courts of appeals . . . shall have jurisdiction of appeals from all final decisions of the district courts of the United States . . . ." "[T]he timely filing of a notice of appeal in a civil case is a jurisdictional requirement." *Bowles* v. *Russell*, 551 U. S. 205, 214 (2007). Rule 4 of the Federal Rules of Appellate Procedure provides, as a general matter and subject to specific qualifications set out in later parts of the Rule, that in a civil case "the notice of appeal . . . must be filed . . . within 30 days after entry of the judgment or order appealed from." Rule 4(a)(1)(A). The parties in this case agree that notice of appeal was not given within 30 days of the June 17 decision but that it was given within 30 days of the July 25 decision. The question is whether the June 17 order was a final decision for purposes of §1291.

In the ordinary course a "final decision" is one that ends

the litigation on the merits and leaves nothing for the
court to do but execute the judgment. *Catlin* v. *United
States*, 324 U. S. 229, 233 (1945). In *Budinich,* this Court
addressed the question whether an unresolved issue of at-
torney's fees for the litigation prevents a judgment from be-
ing final. 486 U. S., at 202. There, a District Court in a
diversity case had entered a judgment that left unresolved
a motion for attorney's fees based on a Colorado statute
providing attorney's fees to prevailing parties in certain
cases. *Id.*, at 197. The Court held that the judgment was
final for purposes of §1291 despite the unresolved issue of
attorney's fees. *Id.*, at 202.

The Court in *Budinich* began by observing that "[a]s a
general matter, at least, . . . a claim for attorney's fees is
not part of the merits of the action to which the fees per-
tain." *Id.*, at 200. The Court noted that awards of at-
torney's fees do not remedy the injury giving rise to the
action, are often available to the party defending the action,
and were regarded at common law as an element of "costs"
awarded to a prevailing party, which are generally not
treated as part of the merits judgment. *Ibid.* Though the
Court acknowledged that the statutory or decisional law
authorizing the fees might sometimes treat the fees as
part of the merits, it held that considerations of "opera-
tional consistency and predictability in the overall applica-
tion of §1291" favored a "uniform rule that an unresolved
issue of attorney's fees for the litigation in question does
not prevent judgment on the merits from being final." *Id.*,
at 202.

The facts of this case have instructive similarities to
*Budinich*. In both cases, a plaintiff sought to recover
employment-related payments. In both cases, the District
Court entered a judgment resolving the claim for unpaid
amounts but left outstanding a request for attorney's fees
incurred in the course of litigating the case. Despite these
similarities, the Funds offer two arguments to distinguish

*Budinich*. First, they contend that unresolved claims for attorney's fees authorized by contract, unlike those authorized by statute, are not collateral for finality purposes. Second, they argue that the claim left unresolved as of June 17 included fees incurred prior to the commencement of formal litigation and that those fees, at least, fall beyond the scope of the rule announced in *Budinich*. For the reasons given below, the Court rejects these arguments.

## III
### A

The Funds' principal argument for the nonfinality of the June 17 decision is that a district court decision that does not resolve a fee claim authorized by contract is not final for purposes of §1291, because it leaves open a claim for contract damages. They argue that contractual provisions for attorney's fees or costs of collection, in contrast to statutory attorney's fees provisions, are liquidated-damages provisions intended to remedy the injury giving rise to the action.

The premise that contractual attorney's fees provisions are always a measure of damages is unpersuasive, for contractual fee provisions often provide attorney's fees to prevailing defendants. See 1 R. Rossi, Attorneys' Fees §9:25, p. 9–64 (3d ed. 2012); cf. *Gleason, supra*, at 137, n. 3. The Funds' argument fails, however, for a more basic reason, which is that the Court in *Budinich* rejected the very distinction the Funds now attempt to draw.

The decision in *Budinich* made it clear that the uniform rule there announced did not depend on whether the statutory or decisional law authorizing a particular fee claim treated the fees as part of the merits. 486 U. S*.,* at 201. The Court acknowledged that not all statutory or decisional law authorizing attorney's fees treats those fees as part of "costs" or otherwise not part of the merits; and the Court even accepted for purposes of argument that the

Colorado statute in that case "ma[de] plain" that the fees it authorized "are to be part of the merits judgment." *Ibid.* But this did not matter. As the Court explained, the issue of attorney's fees was still collateral for finality purposes under §1291. The Court was not then, nor is it now, "inclined to adopt a disposition that requires the merits or nonmerits status of each attorney's fee provision to be clearly established before the time to appeal can be clearly known." *Id.*, at 202. There is no reason to depart here from this sound reasoning. By arguing that a different rule should apply to fee claims authorized by contract because they are more often a matter of damages and thus part of the merits, the Funds seek in substance to relitigate an issue already decided in *Budinich*.

Were the jurisdictional effect of an unresolved issue of attorney's fees to depend on whether the entitlement to fees is asserted under a statute, as distinct from a contract, the operational consistency and predictability stressed in *Budinich* would be compromised in many instances. Operational consistency is not promoted by providing for different jurisdictional effect to district court decisions that leave unresolved otherwise identical fee claims based solely on whether the asserted right to fees is based on a contract or a statute.

The Funds' proposed distinction also does not promote predictability. Although sometimes it may be clear whether and to what extent a fee claim is contractual rather than statutory in nature, that is not always so. This case provides an apt illustration. The Funds' notice of motion itself cited just ERISA; only by consulting the accompanying affidavit, which included an oblique reference to the CBA, could it be discerned that a contractual fee claim was being asserted in that filing. This may explain why the District Court's July 25 decision cited just ERISA, without mention or analysis of the CBA provision or any other contractual provision. 792 F. Supp. 2d,

at 140.

The Funds urge the importance of avoiding piecemeal litigation. The basic point is well taken, yet, in the context of distinguishing between different sources for awards of attorney's fees, quite inapplicable. The Court was aware of piecemeal litigation concerns in *Budinich*, but it still adopted a uniform rule that an unresolved issue of attorney's fees for the litigation does not prevent judgment on the merits from being final. Here it suffices to say that the Funds' concern over piecemeal litigation, though starting from a legitimate principle, is counterbalanced by the interest in determining with promptness and clarity whether the ruling on the merits will be appealed. This is especially so because claims for attorney's fees may be complex and require a considerable amount of time to resolve. Indeed, in this rather simple case, the fee-related submissions take up well over 100 pages in the joint appendix. App. 64–198.

The Federal Rules of Civil Procedure, furthermore, provide a means to avoid a piecemeal approach in the ordinary run of cases where circumstances warrant delaying the time to appeal. Rule 54(d)(2) provides for motions claiming attorney's fees and related nontaxable expenses. Rule 58(e), in turn, provides that the entry of judgment ordinarily may not be delayed, nor may the time for appeal be extended, in order to tax costs or award fees. This accords with *Budinich* and confirms the general practice of treating fees and costs as collateral for finality purposes. Having recognized this premise, Rule 58(e) further provides that if a timely motion for attorney's fees is made under Rule 54(d)(2), the court may act before a notice of appeal has been filed and become effective to order that the motion have the same effect as a timely motion under Rule 59 for purposes of Federal Rule of Appellate Procedure 4(a)(4). This delays the running of the time to file an appeal until the entry of the order disposing of the fee

motion. Rule 4(a)(4)(A)(iii).

In their brief in opposition to the petition for certiorari, the Funds argued that in their case this procedure would not have been applicable. Brief in Opposition 34. Rule 54(d)(2) provides that "[a] claim for attorney's fees and related nontaxable expenses must be made by motion unless the substantive law requires those fees to be proved at trial as an element of damages." The Advisory Committee Notes to Rule 54(d)(2) state that the procedure outlined in that Rule "does not . . . apply to fees recoverable as an element of damages, as when sought under the terms of a contract; such damages typically are to be claimed in a pleading and may involve issues to be resolved by a jury." Advisory Committee's 1993 Note on subd. (d), par. (2) of Fed. Rule Civ. Proc. 54, 28 U. S. C. App., pp. 240–241.

The Funds no longer rely on their reading of Rule 54 and the Advisory Committee Notes as a basis for their argument that the June 17 decision was not final under §1291. And this is not a case in which the parties attempted to invoke Rule 58(e) to delay the time to appeal. Regardless of how the Funds' fee claims could or should have been litigated, however, the Rules eliminate concerns over undue piecemeal appeals in the vast range of cases where a claim for attorney's fees is made by motion under Rule 54(d)(2). That includes some cases in which the fees are authorized by contract. See 2 M. Derfner & A. Wolf, Court Awarded Attorney Fees ¶18.01[1][c], pp. 18–7 to 18–8 (2013) (remarking that Rule 54(d)(2) applies "regardless of the statutory, contractual, or equitable basis of the request for fees," though noting inapplicability where attorney's fees are an element of damages under the substantive law governing the action).

The complex variations in statutory and contractual fee-shifting provisions also counsel against making the distinction the Funds suggest for purposes of finality. Some

fee-shifting provisions treat the fees as part of the merits; some do not. Some are bilateral, authorizing fees either to plaintiffs or defendants; some are unilateral. Some depend on prevailing party status; some do not. Some may be unclear on these points. The rule adopted in *Budinich* ignores these distinctions in favor of an approach that looks solely to the character of the issue that remains open after the court has otherwise ruled on the merits of the case.

In support of their argument against treating contractual and statutory fee claims alike the Funds suggest, nevertheless, that it is unclear whether *Budinich* still applies where, as here, auditor's fees (or other nonattorney professional fees) are included as an incidental part of a motion for attorney's fees and costs. (In this case, auditor's fees accounted for $6,537 of the $143,600.44 requested in total.) To the extent the Funds suggest that similar fees will be claimed alongside attorney's fees only where a contractual fee claim is involved, they are incorrect. Statutory fee claims are not always limited to attorney's fees *per se*. Many fee-shifting statutes authorize courts to award additional litigation expenses, such as expert fees. See *West Virginia Univ. Hospitals, Inc.* v. *Casey*, 499 U. S. 83, 89, n. 4 (1991) (listing statutes); cf. Fed. Rule Civ. Proc. 54(d)(2)(A) (providing mechanism for claims by motion for "attorney's fees and related nontaxable expenses"). Where, as here, those types of fees are claimed and awarded incidental to attorney's fees, there is no apparent reason why parties or courts would find it difficult to tell that *Budinich* remains applicable.

### B

The Funds separately contend that the June 17 decision was not final because their motion claimed some $8,561.75 in auditor's and attorney's fees (plus some modest additional expenses) incurred prior to the commencement of

litigation. These included fees for the initial audit to determine whether Haluch was complying with the CBA, as well as attorney's fees incurred in attempting to obtain records from Haluch, researching fund auditing rights, drafting a letter demanding payment, and working on the initial complaint. Brief for Respondents 4–5; App. 64–67, 81–88. The Funds argue that these fees do not fall within the scope of *Budinich*, because the Court in *Budinich* referred only to fees "for the litigation in question," 486 U. S., at 202, or, equivalently, "attributable to the case," *id.*, at 203.

The fact that some of the claimed fees accrued before the complaint was filed is inconsequential. As this Court has observed, "some of the services performed before a lawsuit is formally commenced by the filing of a complaint are performed 'on the litigation.'" *Webb* v. *Dyer County Bd. of Ed.*, 471 U. S. 234, 243 (1985). "Most obvious examples" include "the drafting of the initial pleadings and the work associated with the development of the theory of the case." *Ibid.* More generally, pre-filing tasks may be for the litigation if they are "both useful and of a type ordinarily necessary to advance the . . . litigation" in question. *Ibid.*

The fees in this case fit that description. Investigation, preliminary legal research, drafting of demand letters, and working on the initial complaint are standard preliminary steps toward litigation. See *id.*, at 250 (Brennan, J., concurring in part and dissenting in part) ("[I]t is settled that a prevailing party may recover fees for the time spent before the formal commencement of the litigation on such matters as . . . investigation of the facts of the case, research on the viability of potential legal claims, [and] drafting of the complaint and accompanying documents . . . ."); 2 Derfner, *supra*, ¶16.02[2][b], at 16–15 ("[H]ours . . . spent investigating facts specific to the client's case should be included in the lodestar, whether [or not] that time is spent prior to the filing of a complaint"). To be

sure, the situation would differ if a party brought a free-standing contract action asserting an entitlement to fees incurred in an effort to collect payments that were not themselves the subject of the litigation. But that is not this case. Here the unresolved issue left open by the June 17 order was a claim for fees for the case being resolved on the merits.

\*    \*    \*

There was no timely appeal of the District Court's June 17 order. The judgment of the Court of Appeals is reversed. The case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*