[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 12-15832

_____

D.C. Docket No. 3:11-cv-00571-RV-EMT

OCCUPY PENSACOLA,
SARA J. BEARD,
MICHAEL B. KIMBERL,
GARY PAULL, JR.,

Plaintiffs-Appellants,

versus

CITY OF PENSACOLA,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

(June 19, 2014)

Before TJOFLAT, MARCUS, and RIPPLE,* Circuit Judges.

_____

* Honorable Kenneth F. Ripple, United States Circuit Judge for the Seventh Circuit,
sitting by designation.

RIPPLE, Circuit Judge:

Occupy Pensacola ("Occupy") created an encampment on city land in Pensacola, Florida ("Pensacola" or the "City"), to conduct a protest in 2011.[1] The City claimed that Occupy was in violation of its ordinances and evicted Occupy from its land. Occupy then brought an action in state court that was removed to the district court. In its amended complaint, it asserted facial and as-applied First Amendment challenges to the city ordinances. It also set out a Fourteenth Amendment selective enforcement claim in which it alleged that the City had enforced selectively an ordinance that prohibited tents on public land without authorization.

The district court granted summary judgment for Pensacola on the selective enforcement claim. It determined that the plaintiffs had failed to establish that the City had enforced selectively its ordinance against the use of tents on public land (the "Tent Ordinance"). The court then dismissed the remaining claims. In its view, it could not give relief with respect to these other claims because each was dependent on Occupy's right to use tents and, except for the selective enforcement claim which Occupy had failed to prove, the Tent Ordinance had not been

---

[1] Though the Plaintiffs-Appellants include both Occupy and several individuals, we refer to them collectively as Occupy.

2

challenged.

Occupy timely appealed the summary judgment decision. It later filed, however, a motion challenging our appellate jurisdiction in which it contended that the district court had not entered a final judgment because the district court had considered only the selective enforcement of the Tent Ordinance claim and had not ruled separately on each of the other claims. We directed that this jurisdictional challenge be carried with the case.

We now determine that we have jurisdiction over the appeal because the district court did in fact adjudicate each of the claims and enter a final judgment. We further hold that the district court misapprehended the gist of the remaining four claims. In our view, these claims are not dependent on the Tent Ordinance and therefore warrant further adjudication. Accordingly, we affirm the district court's judgment with respect to the selective enforcement claim and vacate the judgment and remand the case to the district court for further proceedings with respect to the remaining claims.[2]

---

[2] Occupy makes no substantive argument in its appellate brief with respect to the allegation in Count IV that the special-events ordinance was enforced selectively. We therefore consider that matter to have been abandoned by Occupy. We shall not discuss it here nor shall the district court revisit the issue on remand.

3

## I

## BACKGROUND

### A.    Occupy's Protest

Occupy Pensacola is a group of individuals who describe themselves in the complaint as an unincorporated association active "in educating and bringing awareness of political, social, and economic justice issues through demonstrations, marches, rallies, presentations, discussions, and a 24-hour round-the-clock vigil on public property."[3] Occupy began its protest with a rally on October 15, 2011, at the Martin Luther King, Jr. Plaza ("the Plaza") in Pensacola. Its protest continued without pause, save for one exception, until the City evicted Occupy from city land on November 18, 2011.

The City and Occupy initially seem to have had a cooperative relationship. At the City's request, Occupy briefly took down its protest demonstration on October 21 to avoid interfering with another event in the Plaza. At the request of Pensacola Mayor Ashton Hayward, Occupy also moved its protest from the Plaza to the north lawn of Pensacola's City Hall on October 28.

The City gave Occupy a Letter of No Objection dated October 26, 2011, stating that Occupy did not need a permit to engage in its demonstration on the

---

[3]  R.24 at 2.

4

north lawn of City Hall from October 28 through November 30. The letter noted that Occupy's "request for a variance on the 'no day or night camping' [rule] ha[d] been granted."[4] In a separate paragraph, the letter stated that "[i]t is not necessary for [Occupy] to have a permit in the City Limits to engage in such activity," but added that Occupy did "need to be aware that the City regulates various activities such as the creation of noise, the passing out of flyers or activities such as cooking in the park."[5] The City later gave Occupy a second Letter of No Objection dated October 28. The second letter was identical to the first except in its provision that city approval for the protest expired on November 11, 2011, rather than November 30.

On October 27, the day before Occupy moved to the north lawn, city representatives informed Occupy that the Tent Ordinance prevented Occupy from erecting tents. That same day, Occupy sought and received approval for its tents from the City Council. The mayor also approved Occupy's use of tents on the north lawn until November 11.[6] Occupy's permission to use tents in its protest is

---

[4] Id. at 43.

[5] Id.

[6] At a city council meeting on October 27, Occupy members sought and obtained city council approval of a resolution permitting tents until November 11, 2011. The mayor subsequently consented to the resolution. Id. at 7.

5

reflected in the Letters of No Objection it received from the City.

In the weeks after Occupy received city approval for its use of tents, however, the protest grew significantly in size. The encampment's growth spurred increasing concerns about health and safety. At a city council meeting on November 10, the Tent Ordinance's application to the Occupy protest was discussed. City Administrator William Reynolds erroneously stated at that meeting that the Tent Ordinance never had been enforced even though it was more than forty years old. Reynolds also stated that the City likely would not attempt to enforce the Tent Ordinance against Occupy.

Although the City had assured Occupy earlier that no permit was needed for its protest, the City asked Occupy to apply for a special-events permit on November 16. Occupy refused to apply for the permit. The City then revoked its permission for Occupy to use tents on city property, informed Occupy that it was in violation of unspecified city ordinances, evicted Occupy, and forced Occupy to cease protesting in any manner on the north lawn between eleven at night and six in the morning. A notice to Occupy dated November 17 stated:

> Due to the failure of [Occupy] to apply for a permit under applicable city codes . . . and for the protection and proper maintenance of public areas, the Mayor . . . has determined that your 24 hour use of public lands is no longer tenable.

6

. . . .

Once City property has been returned to its pre-occupation state, you may continue lawful protest activities between the hours of 6 a.m. to 11 p.m. Structures will not be permitted to be erected during the course of any future protest activity.[7]

Occupy was evicted on November 18, 2011. Occupy timely filed this action.

## B.    City Ordinances

A number of city ordinances are implicated in this appeal. We shall describe them briefly and then indicate how they are implicated in Occupy's challenge.

### 1.

Pensacola's special-events permitting scheme applies to the "[t]emporary use of public property . . . for the purposes of conducting certain outdoor, short-term events such as a festival, parade, rodeo, fund raising, walkathon, bikeathon, jogging activity, or any other similar organized activity . . . wherein public streets, parks, or other public areas are to be utilized." Pensacola, Fla., Code § 11-4-171 (2013).[8] Section 11-4-172 specifies that applicants for a permit must provide assurance that they will "make provision for" adequate police presence and garbage cleanup associated with the special event. Id. § 11-4-172. It also

---

[7]  Id. at 60.

[8]  The relevant sections of the current municipal code are identical to those in effect at the time of Occupy's challenge.

requires applicants to provide "[s]uch other information as the mayor may deem necessary in order to properly provide for traffic-control, street and property maintenance and the protection of the public health, safety and welfare." Id. A subsequent section, 11-4-174, requires that an applicant who has appealed the denial of a permit or waiver receive a decision from the mayor within ten days. If the mayor also denies the permit and the applicant appeals the mayor's decision, the city council must hear the appeal by its next regularly scheduled meeting after receiving notice of the appeal. Neighborhood block parties are exempt from the special-events permitting scheme.

With respect to this scheme, Occupy alleged in Count I of its amended complaint that the scheme was facially unconstitutional. In Count II, Occupy alleged that the special-events permitting scheme was unconstitutional as applied to Occupy's protest. In Count IV of its complaint, Occupy alleged that this scheme had been applied selectively against it.[9]

**2.**

The Tent Ordinance provides:

> It shall be unlawful for any person to have, maintain, occupy or use, or cause to be maintained, occupied or used, any fence,

---

[9] Count III, which challenged the application of city park regulations to the north lawn of City Hall, did not concern the special-events permitting scheme.

8

enclosure, building, house, shed, tent or any structure or any obstruction whatsoever, on any street, park or property, or any part or portion thereof, of the city, without the written permission of the mayor, authorized by resolution of the city council, first had and obtained.

Id. § 8-1-7. In Count IV of the complaint, Occupy alleged that this ordinance had been selectively enforced against it.

**3.**

The parade permitting scheme challenged by Occupy states:

No procession or parade excepting the forces of the United States Army or Navy, the military forces of this state and the forces of the police and fire departments or designated funeral procession, shall occupy, march or proceed along any street except in accordance with a permit issued by the mayor and other regulations as are set forth herein which may apply.

Id. § 8-1-13. In Count V of its complaint, Occupy alleged that this ordinance was facially unconstitutional and unconstitutional as applied to the activities of Occupy.

**4.**

Finally, Occupy challenged the application of certain city park regulations. In Count III, it claimed that these regulations were applied wrongfully because they were applied retroactively and in a selective manner against them.

## C.    District Court Proceedings

In addition to setting forth the five counts that we have just described, Occupy also included in its complaint fifteen prayers for relief, including requests for injunctions to prevent the City from enforcing the special-events permitting scheme, the Tent Ordinance, park regulations on the north lawn of City Hall and the parade permit requirement. The prayers for relief also sought judicial declarations that the north lawn of City Hall is a public forum; that Occupy has a right to protest at all times on public sidewalks, including the interior sidewalks of City Hall; that Occupy has a right to march without permits; that Occupy has a right to have tents; and that all of the challenged ordinances violate Occupy's First and Fourteenth Amendment rights.

After the parties filed cross motions for summary judgment, the district court granted summary judgment for Pensacola on the part of Count IV that alleged that it had selectively enforced the Tent Ordinance. It held that Occupy had failed to establish its case. The court then dismissed the rest of Occupy's claims because, in its view, those claims would "have no impact" on the case's outcome.[10] In the district court's view, the pitching of tents on city property was essential to Occupy's case; unless Occupy was able to protest by pitching tents on

---

[10]  R.117 at 6.

10

city property, it simply could not conduct the symbolic protest that it desired to conduct. The court then reasoned that, because Occupy had failed on its only challenge to the Tent Ordinance, any relief granted on the other counts would be ineffectual in achieving Occupy's purpose. No other relief would allow the pitching of tents. Any further relief on the remaining counts therefore would be gratuitous and advisory.

## II

## DISCUSSION

### A.

We first address our appellate jurisdiction. Occupy has suggested by motion that the district court's determination that it was unnecessary to address Counts I, II, III and V of the complaint amounts to a failure to adjudicate completely the case before it. Consequently, Occupy continues, the district court's decision is not a final decision and, therefore, cannot be appealed to this court.

Section 1291 of the Judicial Code gives the courts of appeals jurisdiction over "final decisions" of the district courts.[11] We need not probe the margins of the

---

[11] The statute provides that "[t]he courts of appeals (other than the United States Court of Appeals for the Federal Circuit) shall have jurisdiction of appeals from all final decisions of the district courts of the United States . . . except where a direct review may be had in the Supreme Court." 28 U.S.C. § 1291.

11

case law defining the contours of this authority in order to adjudicate the issue presented here.[12] Our case law and the case law of the Supreme Court make it clear that the district court renders a final judgment when the court adjudicates the case in a manner that leaves nothing more for it to do but to enter judgment.[13] The correctness of the district court's disposition is not relevant to this determination.[14]

---

[12]  For exceptions to the ordinary finality rule, see 15B Charles Alan Wright et al., Federal Practice and Procedure § 3914.28 (2d ed. 1991 & Supp. 2013) (discussing finality of summary judgment orders); 15A id. § 3911 (discussing collateral orders); id. § 3911.1 (discussing how to determine the finality of a collateral order); id. § 3912 (discussing death knell orders); id. § 3913 (discussing pragmatic finality and noting that "[t]he several expandable theories that can be used to elaborate and qualify the requirement of finality under § 1291 are still growing, and must be confined with constant vigilance").

[13]  Ray Haluch Gravel Co. v. Cent. Pension Fund of the Int'l Union of Operating Eng'rs & Participating Emp'rs, 134 S. Ct. 773, 779, 187 L. Ed. 2d 669 (2014) ("In the ordinary course a 'final decision' is one that ends the litigation on the merits and leaves nothing for the court to do but execute the judgment."); FirsTier Mortg. Co. v. Investors Mortg. Ins. Co., 498 U.S. 269, 272-74, 277, 111 S. Ct. 648, 651-53, 112 L. Ed. 2d 743 (1991) (declining to decide that a bench ruling deciding all claims was not a final order); In re Celotex Corp., 700 F.3d 1262, 1265 (11th Cir. 2012) (per curiam) ("A final judgment or order is 'one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'" (quoting Catlin v. United States, 324 U.S. 229, 233, 65 S. Ct. 631, 633, 89 L. Ed. 911 (1945))); see also Martinez v. Carnival Corp., 744 F.3d 1240, 1243-44 (11th Cir. 2014) (noting that the Supreme Court and the Eleventh Circuit have "adopted a functional test for finality, examining what the district court has done," and that "[w]hat matters is whether the case, in all practicality, is finished"); Moya v. Schollenbarger, 465 F.3d 444, 450 (10th Cir. 2006) (stating that even an ambiguous order may be final when the order "evidences an inten[t] to extinguish the plaintiff's cause of action" and "if a district court order expressly and unambiguously dismisses a plaintiff's entire action, that order is final and appealable" (alteration in original) (internal quotation marks omitted)); cf. Grayson v. K Mart Corp., 79 F.3d 1086, 1094-95 (11th Cir. 1996) (determining that an order "fashioned to be an appealable order . . . was in effect non-final" because the district court dismissed claims without prejudice so that they could be transferred).

[14] See 15A Charles Alan Wright et al., Federal Practice and Procedure § 3914.6 (2d ed. 1991 & Supp. 2013) ("Jurisdiction is not destroyed by the fact that the dismissal was procedurally or substantively wrong; the remedy for the error is reversal, not dismissal of the appeal.").

It suffices that the court decided the issues before it in a manner that makes clear that the court had disposed of the case completely.[15]

Here, it is clear that the district court disposed of the case completely. It first adjudicated on the merits the one issue that it believed dispositive of all the plaintiffs' claims. It then proceeded to explain why a merits-based adjudication of the remaining counts was not necessary and, in its view, would amount to a gratuitous pronouncement. It then entered judgment disposing of the entire case. There is no doubt that the district court adjudicated the entire case. Nothing further was left to be done.

Accordingly, we are satisfied that our jurisdiction is secure, and we proceed to the merits.

**B.**

At the outset, it is important to note that Occupy makes no substantive argument that the district court erred in its determination that Occupy had failed to prove its selective enforcement allegation with respect to the Tent Ordinance. Occupy therefore has waived any claim of error on this issue, and we affirm the

---

[15]  See Rutan v. Republican Party of Ill., 868 F.2d 943, 947 (7th Cir. 1989) (holding that even though a district court erroneously failed to address a class action issue it still issued a final order when it dismissed the suit because it left nothing to be decided), aff'd in part and rev'd in part on other grounds, 497 U.S. 62, 110 S. Ct. 2729, 111 L. Ed. 2d 52 (1990).

district court's judgment with respect to the selective enforcement claim.

The district court's other determination—that a merits adjudication of the remaining counts is unnecessary because the court could render no relief that would permit Occupy to demonstrate by pitching tents—is more problematic. Our study of the case, with the assistance of counsel through briefs and at oral argument, convinces us that Occupy's complaint does seek judicial relief on these counts that is not tethered to Occupy's desire to pitch tents on city property. The pitching of tents on city property was no doubt of significant importance to Occupy. Nevertheless, it also asks the court to declare that Occupy has "a right to protest 24 hours a day on public sidewalks, including the interior sidewalks of City Hall."[16] It also seeks a declaration that Occupy has a "right to march without permits."[17] The request for this relief is grounded in the specific allegations in the complaint concerning alternate activity other than tenting in which Occupy wished to engage but that, allegedly, had been impeded by the City. For instance, when a state court declined to grant temporary injunctive relief against an eviction notice to the encampment, Occupy undertook, as an alternate form of protest, "a reduced round-the-clock presence on the sidewalks at City Hall, despite the discomfort and

---

[16]  R.24 at 28.

[17]  Id.

difficulties posed by the weather."[18] This attempt resulted, according to the allegations of the complaint, in several disputes as to the definition of "sidewalk" —disputes that allegedly were designed to "harass, intimidate, confuse, and injure the protestors' first amendment rights and serve[d] to place them in a position of not being able to determine whether they w[ould] be subject to arrest or not."[19] The complaint further alleges that "two individuals who were on the sidewalk located at the north lawn of City Hall were arrested for trespassing."[20]

Other relief sought in the complaint also appears to seek redress that is not related directly to Occupy's desire to place tents on city property. For instance, Occupy asked for a declaration that the north lawn of City Hall was a public forum and not a city park subject to park regulations and that Occupy has a right to protest there twenty-four hours a day.[21]

Occupy also made it clear in its memorandum in support of its amended motion for summary judgment that:

> There are two distinct categories of speech at issue in this case. The first category is the pure core political speech, including the

---

[18]  Id. at 11.

[19]  Id. at 14.

[20]  Id. at 15.

[21]  Id. at 28.

15

political signs, utterances, assemblies, rallies, marches, and literature that Plaintiffs had and exercised while Occupy Pensacola was taking place. . . .

The second category of speech involves symbolic political speech and has two discrete and distinct parts which require individual findings by this Court: 1) tents, and 2) sleeping.[22]

Occupy thus made it clear that its case was not solely dependent on its asserted right to use tents on city property, but also involved its asserted right to engage in other communicative activities on that property. This same distinction had been made earlier in Occupy's opposition to the City's motion for judgment on the pleadings.[23]

## C.

Based on this study of the record, and aided by the briefs and oral presentation of counsel, we must conclude that, putting aside its arguments concerning tenting as symbolic speech, Occupy has raised and preserved adequately allegations that its core First Amendment rights have been violated. On remand, the district court must address these arguments. We think it also appropriate for that court to address in the first instance any questions of standing with respect to these allegations. Of course, we express no opinion on the merits

---

[22]  R.98 at 7-8.

[23]  R.49 at 5-6.

16

of any of these matters.

## Conclusion

For the reasons stated in this opinion, the judgment of the district court is affirmed with respect to its holding that Occupy has failed to establish its claim of selective enforcement of the Tent Ordinance of the City of Pensacola. The remainder of the district court's judgment is vacated, and the case is remanded for further proceedings consistent with this opinion. Occupy may recover its costs in this court.

**AFFIRMED IN PART, VACATED IN PART, and REMANDED.**