[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 21-13825

_____

DAVID ADAMS,
on behalf of themselves and others similarly situated,
MICHAEL SHAW,
on behalf of themselves and others similarly situated,
GERALD KASMERE,
on behalf of themselves and others similarly situated,

Plaintiffs-Appellants,

*versus*

PALM BEACH COUNTY,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 9:21-cv-80127-BER

_____

Before BRANCH and LUCK, Circuit Judges, and SANDS,[*] District Judge.

PER CURIAM:

This case is a collective action under the Fair Labor Standards Act.  The district court dismissed the named plaintiffs' second amended complaint for failure to state a claim.  But the district court neither determined whether the opt-in plaintiffs were similarly situated to the named plaintiffs nor entered any dismissal or judgment as to the opt-in plaintiffs.  Because the district court didn't dispose of all claims against all parties, there's no final order and so we lack appellate jurisdiction.  The appeal is dismissed.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Palm Beach County operated four world-class golf courses.  At some point, the county placed job advertisements on its website looking for volunteers.  One posting, for example, stated that "volunteers [would] serve as course rangers, driving range attendants, and bag drop attendants."  "[V]olunteers," the advertisement said,

_____

[*] Honorable W. Louis Sands, United States District Judge for the Middle District of Georgia, sitting by designation.

"enjoy being outdoors" and "getting to know others with similar interests." As a perk, "volunteers" would also "enjoy . . . reduced fees to play and practice golf."

The named plaintiffs in this case—David Adams, Michael Shaw, and Gerald Kasmere—signed up to "volunteer" at one of the county's golf courses. They accepted whatever tasks management assigned them but mostly worked as "cart attendant[s]," "ranger[s]," and "range assistant[s]." Although the named plaintiffs were not paid wages, they could accept tips. The county also offered volunteers discounted rounds of golf.

After the COVID-19 pandemic, the county removed tip jars to limit contact. One of the named plaintiffs, Kasmere, "complained that removing the tip jars would make it even harder on 'volunteers.'" In the past, Kasmere had also "complained [that the] volunteer program violated wage laws by failing to pay cash wages to individuals who were classified as 'volunteers.'" After objecting to management removing the tip jars, Kasmere was told "for the first time that no positions were available."

On January 22, 2021, the named plaintiffs—Adams, Shaw, and Kasmere—sued the county. The named plaintiffs argued that the county owed them back wages because they were (in fact) employees, not volunteers. To that end, the named plaintiffs brought three counts: (1) a Fair Labor Standards Act claim for failure to pay minimum wages (count one); (2) a Florida state law claim for failure to pay minimum wages (count two); and (3) a Fair Labor Standards Act claim for retaliation against Kasmere (count three).

The named plaintiffs filed the case as a collective action under the Fair Labor Standards Act. Less than a month later, two people who also worked at the golf courses opted in to the suit. These two opt-in plaintiffs—Carey Quincy and Jeffrey Steigman—filed "consent[s] to join." In those consents, the opt-in plaintiffs agreed to "opt-in to become . . . plaintiff[s] in [this] lawsuit . . . to recover unpaid wages and overtime from" the county.

From there, the case went on as usual. The county moved to dismiss, and the named plaintiffs filed a first amended complaint. The county moved to dismiss again, and the district court granted that motion with leave to amend. Neither the parties nor the district court mentioned the opt-in plaintiffs. In line with the district court's order allowing leave to amend, the named plaintiffs filed their operative second amended complaint. The second amended complaint brought the same counts and included the same named plaintiffs (Adams, Shaw, and Kasmere).

For the final time, the county moved to dismiss. In its motion, the county argued that the "named plaintiffs . . . purposefully volunteered to perform services . . . at a public golf course" and so they were not *employees* covered by the Fair Labor Standards Act and Florida's minimum wage laws. The named plaintiffs responded, arguing that their "second amended complaint state[d] a plausible claim for relief." Again, neither side mentioned the opt-in plaintiffs.

The district court granted the county's motion to dismiss. The district court "reviewed the second amended complaint" and

found that the named plaintiffs fell "within an exception to the minimum wage laws for public agency volunteers." And so the district court "granted with prejudice" the county's "motion to dismiss the second amended complaint." The district court did not consider—or dismiss—the opt-in plaintiffs.

The named plaintiffs appealed.

## STANDARD OF REVIEW

"We review de novo our appellate jurisdiction." *United States v. Cody*, 998 F.3d 912, 914 (11th Cir. 2021) (cleaned up).

## DISCUSSION

We lack jurisdiction over this appeal. "As a court of limited jurisdiction, we may exercise appellate jurisdiction only where 'authorized by Constitution and statute.'" *Jenkins v. Prime Ins. Co.*, 32 F.4th 1343, 1345 (11th Cir. 2022) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). By statute, Congress has limited our jurisdiction to "final decisions of the district courts." 28 U.S.C. § 1291; *see also Freyre v. Chronister*, 910 F.3d 1371, 1377 (11th Cir. 2018) ("Generally speaking, our [c]ourt may only hear appeals from a district court's final order.").

"In the ordinary course a 'final decision' is one that ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Ray Haluch Gravel Co. v. Cent. Pension Fund of Int'l Union of Operating Eng'rs*, 571 U.S. 177, 183 (2014). "To constitute a final decision, the district court's order generally must adjudicate all claims against all parties[.]" *Jenkins*, 32 F.4th at

1345 (quoting *Corsello v. Lincare, Inc.*, 276 F.3d 1229, 1230 (11th Cir. 2001)). The crucial question in this case, then, is whether the district court adjudicated all claims against all parties.

The Fair Labor Standards Act provides that "[a]n action to recover [under the Act] may be maintained . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). Section 216(b) adds that "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." *Id.*

Under "[t]he plain language of [section] 216(b)," "those who opt in [to a collective action] become party plaintiffs upon the filing of a consent." *Mickles v. Country Club Inc.*, 887 F.3d 1270, 1278 (11th Cir. 2018). "[N]othing further . . . is required." *Id.* "[T]he opt-in plaintiffs remain party plaintiffs until the district court determines they are not similarly situated and dismisses them." *Id.* In other words, once opt-in plaintiffs file consents to join, those opt-in plaintiffs are parties and remain in the case until the district court determines whether they are similarly situated to the named plaintiffs and enters a dismissal or judgment as to their case.

So, in *Mickles*, for example, workers opted in to a collective action before the district court ruled on a motion for conditional certification. The district court later denied that motion as untimely and never dismissed the opt-in plaintiffs. On appeal, we asked whether the opt-in plaintiffs were "parties to the litigation" even though the district court never certified a collective action.

*Id.* at 1275 (cleaned up).  We concluded that they were because (1) the opt-in plaintiffs "bec[a]me party plaintiffs upon the filing of a consent" and (2) the district court had not "determine[d] they [were] not similarly situated and dismisse[d] them." *Id.* at 1278.

As in *Mickles*, our opt-in plaintiffs (Quincy and Steigman) remain parties to this case.  First, the opt-in plaintiffs consented to join the case.  They became parties as soon as they filed their consents.  Second, the district court neither determined whether the opt-in plaintiffs were similarly situated to the named plaintiffs nor entered any dismissal or judgment as to their case.  As to determining whether they were similarly situated, the district court never purported to undertake that inquiry.  As to entering a dismissal or judgment, the district court never mentioned—or dismissed—the opt-in plaintiffs.  In ruling on the county's motion to dismiss, the district court (like the parties) considered only the named plaintiffs' claims as outlined in the second amended complaint.  Because the district court didn't determine whether the opt-in plaintiffs were similarly situated to the named plaintiffs, and didn't enter a dismissal or judgment as to the opt-in plaintiffs, the opt-in plaintiffs remain in this case.

And because the opt-in plaintiffs remain in the case, the district court "did not resolve all claims against all parties" and "issued no [appealable] final decision within the meaning of [section] 1291." *Jenkins*, 32 F.4th at 1346 (dismissing the appeal for lack of appellate jurisdiction); *see also, e.g., Corsello*, 276 F.3d at 1230 ("In this case, the district court did not adjudicate [the plaintiff's] claims

against [one of the defendants], and thus, there is no appealable final decision."); *Hood v. Plantation Gen. Med. Ctr., Ltd.*, 251 F.3d 932, 934 (11th Cir. 2001) (dismissing an appeal for lack of appellate jurisdiction where "one claim remained for one of the parties"). We therefore lack jurisdiction.

**APPEAL DISMISSED.**