[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 12-15525
Non-Argument Calendar

_____

D.C. Docket No. 1:12-cv-23032-UU


JOSE ALVARO DOLMO MONTERO,

Plaintiff-Appellant,

versus

CARNIVAL CORPORATION,
d.b.a. Carnival Cruise Lines, Inc.,

Defendant-Appellee.


_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(July 12, 2013)

Before CARNES, WILSON, and ANDERSON, Circuit Judges.

PER CURIAM:

Jose Montero, a Honduran citizen and former crewmember aboard Carnival

Corporation's vessel, the Inspiration, appeals the district court's order granting

Carnival's motion to compel arbitration of his claims pursuant to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 9 U.S.C. § 201 et seq. Montero contends that the arbitration provision in his employment contract does not apply to his claims.

## I.

Montero gradually developed back pain while working as a fire patrolman aboard the Inspiration. On March 18, 2010, he visited the ship's doctor who concluded that he was no longer able to perform the duties of his job. Carnival then sent Montero to shore for further medical treatment, first in Mexico, then Miami, then Honduras, and finally Panama. In Panama, Montero was told that he needed major back surgery, which was performed on January 27, 2011. Montero contends that the surgery he received in Panama was medically unnecessary and did him more harm than good.

Montero filed suit against Carnival in Florida state court, asserting claims of Jones Act negligence, unseaworthiness, and maintenance and cure under maritime law. Carnival removed the case to federal court and filed a motion to compel arbitration based on the arbitration provision contained in the "Seafarer's Agreement," which is essentially the employment contract between Montero and Carnival. The district court granted the motion and ordered that the case be closed for administrative purposes. This is Montero's appeal.

II.

As an initial matter, Carnival contends that we lack jurisdiction because the

district court's order compelling arbitration was a non-appealable interlocutory

order, instead of an appealable final decision, because it did not dismiss Montero's

claims.  A "final decision with respect to an arbitration" is immediately appealable,

9 U.S.C. § 16(a)(3), but an "interlocutory order . . . compelling arbitration" is not,

id. § 16(b)(3). [1]  A district court order directing that arbitration proceed and

dismissing a plaintiff's claims, with or without prejudice, is "a final decision with

respect to an arbitration" that is immediately appealable.  Green Tree Financial

Corp. – Ala. v. Randolph, 531 U.S. 79, 86–87, 121 S.Ct. 513, 519–20 (2000)

(dismissal with prejudice); Hill v. Rent-A-Center, Inc., 398 F.3d 1286, 1288 (11th

Cir. 2005) (dismissal without prejudice).  By contrast, an order that compels

arbitration but stays the proceedings is an interlocutory order that is not

immediately appealable.  Am. Express Fin. Advisors, Inc. v. Makarewicz, 122 F.3d

936, 939 (11th Cir. 1997).

---

[1] Chapter 1 of the Federal Arbitration Act, which includes 9 U.S.C. § 16, does not directly apply to this case.  See 9 U.S.C. § 1 ("[N]othing herein contained shall apply to contracts of employment of seamen . . . .").  However, the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, which applies notwithstanding the fact that this case involves a contract of employment of a seaman, Bautista v. Star Cruises, 396 F.3d 1289, 1300 (11th Cir. 2005), incorporates the provisions of Chapter 1 that do not conflict with it, 9 U.S.C. § 208.  Because 9 U.S.C. § 16 does not conflict with the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, it applies to this case and we evaluate the jurisdictional issue under its framework.

In this case, the district court's order that compelled arbitration did not specifically state that Montero's claims were dismissed. It did state, however, "that for administrative purposes this case is hereby CLOSED." Notably, the district court's order did not stay the proceedings, nor did it contemplate any further action on this case. It effectively "end[ed] the litigation on the merits and [left] nothing more for the [district] court to do but execute the judgment." Green Tree, 531 U.S. at 86–87, 121 S.Ct. at 519. Accordingly, the district court's order was a "final decision with respect to an arbitration" and we have appellate jurisdiction. 9 U.S.C. § 16(a)(3); Green Tree, 531 U.S. at 86–87, 121 S.Ct. at 519.

III.

Montero contends that the district court should not have compelled arbitration because the seafarer's agreement, which contains the arbitration clause, had terminated before this dispute arose. We review de novo a district court's order compelling arbitration. Doe v. Princess Cruise Lines, Ltd., 657 F.3d 1204, 1213 (11th Cir. 2011).

The Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 9 U.S.C. § 201 et seq., applies if four jurisdictional prerequisites are satisfied: "(1) there is an agreement in writing . . .; (2) the agreement provides for arbitration in the territory of a signatory of the Convention; (3) the agreement arises out of a legal relationship, whether contractual or not, which is considered

4

commercial; and (4) a party to the agreement is not an American citizen, or . . . the commercial relationship has some reasonable relation with one or more foreign states." Doe, 657 F.3d at 1294 n.7. When the Convention applies, "a court conducts a very limited inquiry" when deciding a motion to compel arbitration. Id. at 1294 (quotation marks omitted). "A district court must order arbitration unless (1) the four jurisdictional prerequisites are not met or (2) one of the Convention's affirmative defenses applies." Id. at 1294–95 (citation omitted). Affirmative defenses that apply in this context include where the agreement to arbitrate is "null and void, inoperative or incapable of being performed." Bautista v. Star Cruises, 396 F.3d 1289, 1301 (11th Cir. 2005).

Although Montero does not phrase his arguments in terms of the Convention's jurisdictional prerequisites or affirmative defenses, we take his argument to be that one or more of the affirmative defenses applies because the arbitration clause ceased to be effective when the agreement terminated and because this dispute falls outside the arbitration clause's scope. See id. (analyzing the plaintiff's arguments under the Convention's affirmative defenses even though the plaintiffs did not "articulate their defenses in [those] terms").

Even though this dispute involves the Convention, which favors arbitration, the parties' intent controls. See id. at 1295 ("[T]he Convention Act 'generally establishes a strong presumption in favor of arbitration of international commercial

5

disputes.'"). That is, we do not "twist the language of the contract to achieve a result which is favored by federal policy but contrary to the intent of the parties." Doe, 657 F.3d at 1214 (quoting Goldberg v. Bear, Stearns & Co., 912 F.2d 1418, 1419–20 (11th Cir. 1990)). To determine the parties' intent, we start with the language of the agreement. See id. The termination provision of the seafarer's agreement between Montero and Carnival states in relevant part:

> This Agreement shall automatically terminate without notice immediately upon Seafarer's unscheduled disembarkation of the assigned vessel if Seafarer disembarks the vessel for any reason, including but not limited to unscheduled personal leave, illness or injury, for more than one full voyage. This Agreement shall also terminate without notice immediately upon Seafarer being unfit or unable to serve in his or her stated position at the commencement of a new voyage.

Under that language, the agreement terminated when Montero, before he was scheduled to do so, disembarked from the cruise ship to seek treatment for his back injury which was preventing him from doing his job.

The arbitration clause in the seafarer's agreement does not expressly state whether it survives the termination of that agreement, but the unambiguous language clearly contemplates that it does. It broadly provides that "any and all disputes," other than certain wage disputes, "shall be referred to and finally resolved by arbitration," and it expressly includes disputes regarding the agreement's termination. Clearly the parties contemplated some circumstances in which the arbitration clause would survive termination of the agreement. And that

makes sense because if it did not, there would be little room for the clause's operation.  Montero would have us conclude that arbitration is not required if an employee brings a claim after the employment contract terminates.  But that interpretation would allow an employee to avoid arbitration entirely by either disembarking from the ship ahead of schedule or waiting until his 10-month contract expires before he brings a claim.  Such an interpretation would contradict the arbitration clause's broad language, as well as the Convention's policy in favor of arbitration.  Accordingly, we conclude that the arbitration clause did not cease to be effective when Montero disembarked the vessel ahead of schedule.[2]

Montero contends that even if the arbitration clause survives the termination of the agreement, his claims fall outside its scope because they arise under the Jones Act, not the seafarer's agreement.  As initial matter, we note that the arbitration clause, by its terms, is not limited to "disputes arising out of or in connection with [the seafarer's] agreement."  It also requires arbitration of "any and all disputes arising out of . . . Seafarer's service on the vessel."  Montero maintains that this language is not broad enough to encompass his suit, which he alleges arose out "the shoreside doctor's negligence."

---

[2] Montero also contends that Carnival is equitably estopped from enforcing the arbitration clause because Carnival treated the seafarer's agreement as terminated when it stopped paying his wages.  That argument is without merit.  Carnival's assertion that the arbitration clause survives termination of the seafarer's agreement is not inconsistent with treating the seafarer's agreement as terminated.  See Sea Byte, Inc. v. Hudson Marine Mgmt. Servs., Inc., 565 F.3d 1293, 1304 (11th Cir. 2009) (equitable estoppel applies only when a party adopts a position that is "contrary to" an earlier asserted position).

We reject that argument.  Montero's complaint raised four claims, two of which alleged Jones Act negligence, one of which alleged unseaworthiness, and one of which asserted a cause of action for maintenance and cure.  But for Montero's service on the vessel, none of those claims would have been viable.  See Doe, 657 F.3d at 1220–21 (holding that claims arising under the Jones Act and allegations of "unseaworthiness" and "maintenance and cure" "are dependent on [the plaintiff's] status as a seaman employed by the cruise line and the rights that she derives from that employment status"); see also O'Boyle v. United States, 993 F.2d 211, 213 (11th Cir. 1993) ("[I]n order to recover damages under the Jones Act, [a plaintiff] must have the status of a seaman."); Hurst v. Pilings & Structures, Inc., 896 F.2d 504, 505 (11th Cir. 1990) ("The Jones Act permits a seaman injured in the course of employment to bring an action against his employer for damages."); Offshore Co. v. Robison, 266 F.2d 769, 781 (5th Cir. 1959) ("The admiralty doctrine of absolute liability for unseaworthiness is based on protection of seamen who sign articles for a voyage and are then under the absolute control of a master with power to order seamen to do the ship's work in any weather, under any conditions, using such equipment as may be furnished by the shipowner."); Flores v. Carnival Cruise Lines, 47 F.3d 1120, 1122–23 (11th Cir. 1995) ("Maintenance and cure is a remedy with roots in the medieval sea codes; it is a remedy designed to protect seamen from the perils of living and working at sea.").

8

Because none of Montero's claims would be viable if he had not served as an employee on one of Carnival's cruise ships, this dispute arises out of his service on the vessel and falls within the scope of the arbitration clause.

**AFFIRMED**.