[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

————————

No. 12-15164

————————

D. C. Docket No. 1:12-cv-22293-UU

MELVIN GUALBERTO MEDINA MARTINEZ,

Plaintiff-Appellant,

versus

CARNIVAL CORPORATION,
a.k.a. Carnival Cruise Lines, Inc.,

Defendant-Appellee.

————————

Appeal from the United States District Court
for the Southern District of Florida

————————

(February 24, 2014)

Before MARCUS, DUBINA, and WALKER,[*] Circuit Judges.

DUBINA, Circuit Judge:

---

[*]Honorable John Walker, Jr., United States Circuit Judge for the Second Circuit Court of Appeals, sitting by designation.

Appellant Melvin Gualberto Medina Martinez ("Martinez") appeals the district court's order compelling arbitration of his claims pursuant to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("CREFAA"), 9 U.S.C. §§ 201–208.  Martinez argues his claim of Jones Act negligence, 46 U.S.C. § 30104, does not fall within his employment contract ("Seafarer's Agreement") with Carnival Cruise Lines, Inc. ("Carnival") and, therefore, is not within the scope of the contract's arbitration clause.  We agree with the district court that arbitration is required, and therefore, we affirm the district court's order compelling arbitration.

## I.

Martinez is a Honduran citizen who suffered a back injury while employed as a mason aboard Carnival's vessel, the Fascination.  Martinez worked ten hours per day, seven days a week, and was required to lift and transport boxes of tiles and cement and heavy rolls of carpet.  During his employment, Martinez developed back pain, which he reported to his supervisor.  After his condition worsened, and he began to feel pain not only in his back but also in his lower extremities, Martinez sought further medical care.

Martinez had back surgery in Panama, performed by Carnival's selected physician, Dr. Avelino Gutierrez.  After the surgery, Martinez continued to experience serious orthopedic and neurological problems, including numbness in

2

both legs, difficulty urinating, need for a catheter, sexual dysfunction, and psychological problems.  Carnival sent Martinez to Miami, where he continued to receive medical treatment.

The Seafarer's Agreement, which covered the terms of Martinez's employment, included an arbitration clause stating that, except for wage disputes, "any and all disputes arising out of or in connection with this Agreement, including any question regarding its existence, validity, or termination, or Seafarer's service on the vessel, shall be referred to and finally resolved by arbitration."  [R. DE 1-1 at 6, ¶ 7.]

After his injury, Martinez filed suit against Carnival in Florida state court, asserting claims of Jones Act negligence, unseaworthiness, and failure to provide adequate maintenance and cure.  In his Jones Act claim, Martinez alleged that the physician chosen and paid by Carnival negligently performed his back surgery.  Carnival removed the case to the federal district court and filed a motion to compel arbitration.  The district court granted the motion, dismissed as moot all other pending motions, and closed the case for administrative purposes.  Martinez then timely appealed.

## II.

3

"We review the district court's interpretation of [an] arbitration clause *de novo*." *Hemispherx Biopharma, Inc. v. Johannesburg Consol. Invs.*, 553 F.3d 1351, 1366 (11th Cir. 2008).

## III.

As we must, we first address our jurisdiction to hear this case. Carnival contends that we lack jurisdiction because the district court's order compelling arbitration was a non-appealable interlocutory order, not a final appealable decision. We are unpersuaded.

The Federal Arbitration Act provides that a party may appeal "a final decision with respect to an arbitration." 9 U.S.C. § 16(a)(3). A final decision "is a decision that ends the litigation on the merits and leaves nothing more for the court to do but execute the judgment." *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 86, 121 S. Ct. 513, 519 (2000) (internal quotation marks omitted). Yet, a party may not appeal "an interlocutory order . . . compelling arbitration." 9 U.S.C. § 16(b)(3).[1] Thus, a district court order compelling arbitration and dismissing a plaintiff's claim is a final decision within the meaning of § 16(a)(3). *Hill v. Rent-A-*

---

[1] Though Chapter 1 of the Federal Arbitration Act, which includes 9 U.S.C. § 16, does not directly apply to this case, *see id.* § 1 ("[N]othing herein contained shall apply to contracts of employment of seamen . . . ."), the jurisdictional issue is evaluated under the framework of 9 U.S.C. § 16 because the CREFAA incorporates the provisions of Chapter 1 that do not conflict with it. *Id.* § 208.

*Center, Inc.*, 398 F.3d 1286, 1288 (11th Cir. 2005).  In contrast, a district court order compelling arbitration and staying the proceedings before the court is an interlocutory order that cannot be appealed.  *Am. Express Fin. Advisors, Inc. v. Makarewicz*, 122 F.3d 936, 939 (11th Cir. 1997).  Carnival essentially argues that because the district court simply granted the motion to compel and closed the case for administrative purposes, but did not dismiss the case, its order was more akin to a stay of the proceedings; thus, the district court's decision was an interlocutory order that may not be appealed under § 16(b)(3).

The Supreme Court has adopted a functional test for finality, examining what the district court has done, and has reiterated that a decision is final if it "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Ray Haluch Gravel Co. v. Cent. Pension Fund of the Int'l Union of Operating Eng'rs & Participating Emp'rs*, ___ U.S. ___, 134 S. Ct. 773, 779 (2014); *Green Tree*, 531 U.S. at 86, 121 S. Ct. at 519; *Catlin v. United States*, 324 U.S. 229, 233, 65 S. Ct. 631, 633 (1945). Our court has applied the same test for finality, *see, e.g., W.R. Huff Asset Mgmt. Co. v. Kohlberg, Kravis, Roberts & Co.*, 566 F.3d 979, 984 (11th Cir. 2009); *Pitney Bowes, Inc. v. Mestre*, 701 F.2d 1365, 1368 (11th Cir. 1983), and looks to the practical effect of the district court's order, not to its form.

*See Thomas v. Blue Cross & Blue Shield Ass'n*, 594 F.3d 823, 829 (11th Cir. 2010) ("In making [§ 1291 finality] determinations, 'we take a functional approach, looking not to the form of the district court's order, but to its actual effect.'" (quoting *Birmingham Fire Fighters Ass'n 117 v. Jefferson Cnty.*, 280 F.3d 1289, 1293 (11th Cir. 2002)).  In *Young v. Prudential Insurance Co. of America*, 671 F.3d 1213 (11th Cir. 2012), looking to the substance of the district court's order, we held that it was not final even though it dismissed the case on the merits because the order had remanded part of the case, but "in substance," left unresolved whether the plaintiff was entitled to relief.  *Id.* at 1215.

The pertinent question we address in this case is not whether the district court's  administrative closure is the functional equivalent of a dismissal, but rather, whether the district court's order, on the record before us, ended the litigation on the merits and left nothing more for the district court to do but execute the judgment.  The district court granted Carnival's motion to compel, dismissed as moot all other motions, and administratively closed the case.   Notably, the district court's order did not stay the proceedings, nor did it contemplate any further action on this case.  Although the district court did not dismiss the case, the court's order left all

6

further merits determinations to the arbitrator.[2]   Thus, the order effectively "end[ed] the litigation on the merits and [left] nothing more for the [district] court to do but execute the judgment."  *Green Tree*, 531 U.S. at 86, 89, 121 S. Ct. at 519, 521 (internal quotation marks omitted) (determining that an order of the district court compelling the parties to arbitrate and dismissing all the claims before it was a final and appealable decision).

We acknowledge that administratively closing a case is not the same as dismissing a case.  *See Fla. Ass'n for Retarded Citizens, Inc. v. Bush*, 246 F.3d 1296, 1298 (11th Cir. 2001) (per curiam) (stating that a "closed" case does not prevent the district court from reactivating a case).  Moreover, an administrative closure is not dispositive of finality.  However, our focus is not on the district court's label, but rather, on the effect of the district court's order.  *See Thomas*, 594 F.3d at 829.  When the district court compels arbitration and disposes of all pending motions, it leaves the court with nothing more to decide, and it effectively and functionally has issued a decision that "ends the litigation on the merits."  *Ray Haluch*, ___ U.S. at ___, 134 S. Ct. at 779.

---

[2] Indeed, both parties conceded at oral argument that there were no other issues for the district court to resolve after it compelled arbitration.

7

In a prior case, we addressed the finality of an administratively closed case. *See Brandon, Jones, Sandall, Zeide, Kohn, Chalal & Musso, P.A. v. MedPartners, Inc.*, 312 F.3d 1349 (11th Cir. 2002) (per curiam), *abrogated by Ray Haluch*, ___ U.S. ___, 134 S. Ct. 773.  In *Brandon*, we determined that the district court order was not final even though it administratively closed the case because the district court explicitly retained jurisdiction to award attorneys' fees.  *Id.* at 1355.  The district court in *Brandon*, unlike the district court in the present case, acknowledged that it still had other matters to resolve.  *Id.* at 1353.  Our court even noted that in most cases when a district court "rule[s] on all the relief requested," and "close[s]" the case in its order, "that conduct would lead us to conclude that the order was final." *Id.* at 1354.  Thus, even under the analysis utilized in *Brandon*, the district court order in the present case would be final because it disposed of all pending motions and did not retain jurisdiction to confirm the arbitration award or to award attorneys' fees associated with the arbitration.  *See also Emp'rs Ins. of Wausau v. Bright Metal Specialties, Inc.*, 251 F.3d 1316, 1321 (11th Cir. 2001) ("[G]enerally speaking, a decision of the district court is final when it disposes of all the issues framed by the litigation and leaves nothing for the district court to do but execute the judgment.").

8

The slight distinction between an administratively closed case and a dismissed case does not resolve the question of finality.  What matters is whether the case, in all practicality, is finished.  In this case, the district court not only administratively closed the case, but it also denied all pending motions as moot and compelled arbitration.  The district court's order was a functionally final and appealable decision because it left nothing more for the court to do but execute the judgment.  Accordingly, we conclude that the order compelling Martinez to arbitrate his claims was "a final decision with respect to an arbitration," and we have appellate jurisdiction.  9 U.S.C. § 16(a)(3).  *See also Montero v. Carnival Corp.*, 523 F. App'x 623, 625 (11th Cir. 2013) (per curiam) (holding that the district court order compelling arbitration was a final appealable decision even though the order closed rather than dismissed the case).

IV.

Martinez argues the district court erred in compelling arbitration because the Seafarer's Agreement terminated before this dispute arose.

The termination provision of the Seafarer's Agreement between Martinez and Carnival states, in relevant part:

> This Agreement shall automatically terminate without notice immediately upon Seafarer's unscheduled disembarkation of the assigned vessel if Seafarer disembarks the vessel for any reason,

9

including but not limited to unscheduled personal leave, illness or injury, for more than one full voyage.  This Agreement shall also terminate without notice immediately upon Seafarer being unfit or unable to serve in his or her stated position at the commencement of a new voyage.

[R. 4-1 ¶ 2.]  Under this language, the Seafarer's Agreement terminated when Martinez disembarked from the cruise ship to seek treatment for his back injury which was preventing him from doing his job.

The Seafarer's Agreement's arbitration clause does not expressly state whether it survives the termination of the Seafarer's Agreement, but its unambiguous language suggests viability.  The provision states in relevant part:

> Except for a wage dispute governed by [Carnival]'s Wage Grievance Policy and Procedure, any and all disputes arising out of or in connection with this Agreement, including any question regarding its existence, validity, or termination, or Seafarer's service on the vessel, shall be referred to and finally resolved by arbitration . . . .

[R. 4-1 ¶ 7.]  Clearly, the parties contemplated some circumstances in which the arbitration clause would survive the termination of the Seafarer's Agreement.

"[P]arties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, ___, 130 S. Ct. 2772, 2777 (2010).  Thus, a court may

10

conclude that the parties agreed to arbitrate the very issue of "arbitrability" where "there is clear and unmistakable evidence that they did so." *Id.* at ___, 130 S. Ct. at 2783 (internal quotation marks omitted).  Because parties can agree to arbitrate the very question of arbrabililty, they can also agree to arbitrate disputes about contract termination.  In this case, the district court did not err in refusing to determine whether the Agreement had terminated because the question of termination has remained in dispute and the "clear and unmistakable" language of the contract indicates that the parties intended for just such a dispute to be decided by arbitration and not the court.  *See id*. at ___, 130 S. Ct. at 2783.[3]

Martinez also argues that even if the arbitration provision survives the termination of the agreement, his claim for medical negligence falls outside the scope of the arbitration clause in his employment contract because it did not arise under the Seafarer's Agreement.  He asserts that the language requiring arbitration pursuant to the Agreement does not include claims that arise from shoreside medical negligence.

---

[3] Martinez also contends Carnival is equitably estopped from enforcing the arbitration provision because Carnival took the inconsistent position of treating the Seafarer's Agreement as terminated when it stopped paying his wages but as not terminated for the purpose of arbitrating his claim.  Martinez is incorrect.  Carnival's assertion that the arbitration provision survives termination of the Seafarer's Agreement is not inconsistent with treating the Seafarer's Agreement as terminated.  Thus, equitable estoppel does not apply.  *See Sea Byte, Inc. v. Hudson Marine Mgmt. Servs., Inc.*, 565 F.3d 1293, 1304 (11th Cir. 2009) (stating that equitable estoppel applies only when a party adopts a position that is contrary to an earlier position).

11

There is a "federal policy favoring arbitration of labor disputes." *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, ___, 130 S. Ct. 2847, 2857 (2010) (internal quotation marks omitted). When parties agree to arbitrate some matters pursuant to an arbitration clause, the "law's permissive policies in respect to arbitration counsel that any doubts concerning the scope of arbitral issues should be resolved in favor of arbitration." *Id.* at ___, 130 S. Ct. at 2857 (internal quotation marks omitted). Courts apply the presumption of arbitrability "only where a validly formed and enforceable arbitration agreement is ambiguous about whether it covers the dispute at hand," and "where the presumption is not rebutted." *Id.* at ___, 130 S. Ct. at 2858–59.

In determining whether a dispute arises out of a contract, "the focus is on whether the tort or breach in question was an immediate, foreseeable result of the performance of contractual duties." *Doe v. Princess Cruise Lines, Ltd.*, 657 F.3d 1204, 1218 (11th Cir. 2011) (internal quotation marks omitted). In *Doe*, we held that claims arising under the Jones Act "are dependent on [the plaintiff's] status as a seaman employed by the cruise line and the rights that [the plaintiff] derives from that employment status." *Id.* at 1221. *See also O'Boyle v. United States*, 993 F.2d 211, 213 (11th Cir. 1993) ("[I]n order to recover damages under the Jones Act, [a plaintiff] must have

12

the status of a seaman.").  Although the Jones Act dictates Carnival's duty of care, that duty extends to Martinez only because he was employed by Carnival as a seaman under the contract.  In addition, the terms of the Agreement, which specifically reference Carnival's obligation to provide medical treatment aboard the vessel or ashore, contemplated that Carnival would provide shoreside medical care for injuries Martinez sustained while on the job.  Accordingly, we conclude that Martinez's dispute with Carnival clearly arose out of or in connection with the Seafarer's Agreement and is subject to arbitration.

## V.

For the foregoing reasons, we affirm the district court's order compelling arbitration.

**AFFIRMED.**

13