Justin T. HOLCOMBE, Plaintiff,

v.

DIRECTV, LLC, Defendant.

CIVIL ACTION NO. 4:15–
CV–0154–LMM

United States District Court,
N.D. Georgia, Rome Division.

Signed February 8, 2016

Filed February 9, 2016

James Marvin Feagle, Clifton Dorsen, Skaar and Feagle, Tucker, GA, Kris Kelly Skaar, Skaar & Feagle, LLP, Woodstock, GA, for Plaintiff.

Claire Carothers Oates, David Lewis Balser, King & Spalding, LLP, Atlanta, GA, for Defendant.

## *ORDER*

LEIGH MARTIN MAY, UNITED STATES DISTRICT JUDGE

This matter comes before the Court on Defendant DIRECTV, LLC's ("DIRECTV's") Motion to Compel Arbitration and to Dismiss Action [4].

Plaintiff Justin T. Holcombe initiated this action on July 9, 2015, in the Superior Court of Bartow County, Georgia, alleging

violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, and the Georgia Public Utilities Code, O.C.G.A. § 46–5–27. Dkt. No. [1–1]. DIRECTV removed to this Court on July 17, 2015. Dkt. No. [1]. DIRECTV now moves to compel Mr. Holcombe to arbitration pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 *et seq.*, arguing his claims are governed by an agreement to arbitrate disputes. Dkt. No. [4]. Further, DIRECTV asks the Court to dismiss this action because it is subject to arbitration. *Id.* For the reasons explained in this Order, DIRECTV's Motion is **DENIED**.

## I. *Facts*

In his Complaint, Mr. Holcombe alleges he was a subscriber of satellite television programming with DIRECTV from April 2010 until March 2014. Dkt. No. [1–1] ¶ 10. Mr. Holcombe contends he cancelled his account with DIRECTV, paid all sums owed, and completed all contractual obligations with DIRECTV by March 2014. *Id.* ¶ 11. Upon cancelling his account, Mr. Holcombe asked DIRECTV never to call him again. *Id.* ¶ 12. Mr. Holcombe alleges DIRECTV began calling him in May 2014 to solicit him to enter into a new agreement with DIRECTV for 24 months of satellite television services. *Id.* ¶ 13. On multiple occasions in 2014, Mr. Holcombe expressed his disinterest in receiving DIRECTV services, and requested that it stop calling him and place him on its "do not call" list. *Id.* ¶ 14. However, Mr. Holcombe contends that he continues to receive calls from various telephone numbers, which he learns upon answering or returning the calls are from DIRECTV. *Id.* ¶¶ 16–18. When Mr. Holcombe has returned missed calls from these numbers, he was told that the purpose of the call was to sell him a new promotional offer for DIRECTV services. *Id.* ¶ 18. Mr. Holcombe contends that he never consented to the telephone calls, and he has no existing relationship with DIRECTV. *Id.* ¶¶ 20–21.

DIRECTV attaches to its motion the affidavit of employee Bianca Walters, who states that Mr. Holcombe called DIRECTV on March 2, 2014, to cancel his DIRECTV services at the end of that billing cycle, which was March 14, 2014. Dkt. No. [4–2] ¶¶ 20–21. Ms. Walters alleges the Customer Service Representative noted a call from Mr. Holcombe on March 17, 2014, where he indicated that he did not intend to pay his bill. *Id.* ¶ 22. However, Mr. Holcombe paid his bill on April 17, 2014. *Id.* ¶ 23.

Ms. Walters also testifies that Mr. Holcombe was a DIRECTV customer from April 2010 to March 2014, and as such, he agreed to multiple versions of the DIRECTV Customer Agreement. Dkt. No. [4–2] ¶ 6. She contends that the most recent Customer Agreement Mr. Holcombe accepted was the June 2013 version, which contains an arbitration provision governing "any legal or equitable claim relating to this Agreement, any addendum, or [the customer's] Service." Dkt. No. [4–1] at 2; Dkt. No. [4–3].

## II. *Legal Standard*

 The principal purpose of the FAA is "to ensure judicial enforcement of privately made agreements to arbitrate." *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 219, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985). Therefore, "[t]he FAA embodies a liberal federal policy favoring arbitration agreements." *Caley v. Gulfstream Aerospace Corp.,* 428 F.3d 1359, 1367 (11th Cir.2005) (citation and quotation marks omitted). Generally, "[t]he role of the courts is to 'rigorously enforce agreements to arbitrate.'" *Hemispherx Biopharma, Inc. v. Johannesburg Consol. Invs.,* 553 F.3d 1351, 1366 (11th Cir.2008) (quoting

*Dean Witter Reynolds,* 470 U.S. at 221, 105 S.Ct. 1238).

■ When a district court rules on a motion to compel arbitration under the FAA, it must engage in a two-step inquiry: the first step is determining whether the parties agreed to arbitrate the dispute in question. *Klay v. All Defendants,* 389 F.3d 1191, 1200 (11th Cir.2004). If the dispute is subject to an arbitration agreement, the second step is determining whether "legal constraints external to the parties' agreement foreclosed arbitration." *Id.* (quoting *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 628, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985)).

■ With regard to the first step, "it is the language of the contract that defines the scope of disputes subject to arbitration." *E.E.O.C. v. Waffle House, Inc.,* 534 U.S. 279, 289, 122 S.Ct. 754, 151 L.Ed.2d 755 (2002). Courts then measure the language of the arbitration provision against "the factual allegations in the complaint match[ed] up with the causes of action asserted" *Doe v. Princess Cruise Lines, Ltd.,* 657 F.3d 1204, 1220 n. 13 (11th Cir. 2011). In making this determination, "a court is not to rule on the potential merits of the underlying claims." *AT & T Techs., Inc. v. Commc'ns Workers of Am.,* 475 U.S. 643, 649, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986).

■ The inquiry as to whether parties have agreed to arbitrate a dispute "must be undertaken against the background of a 'liberal federal policy favoring arbitration agreements.'" *Klay,* 389 F.3d at 1200 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)). Thus, "questions of arbitrability, when in doubt, should be resolved in favor of arbitration." *Emp'rs Ins. of Wausau v. Bright Metal Specialties, Inc.,* 251 F.3d 1316, 1322 (11th Cir.2001). However,

"[b]ecause the FAA is 'at bottom a policy guaranteeing the enforcement of private contractual arrangements,'" a district court faced with a motion to compel arbitration must "look first to whether the parties agreed to arbitrate a dispute, not to general policy goals, to determine the scope of the agreement." *Waffle House,* 534 U.S. at 294, 122 S.Ct. 754 (quoting *Mitsubishi Motors,* 473 U.S. at 625, 105 S.Ct. 3346). Courts will not "override the clear intent of the parties, or reach a result inconsistent with the plain text of the contract, simply because the policy favoring arbitration is implicated." *Id.* Thus, the presumption of arbitrability applies "only where a validly formed and enforceable arbitration agreement is ambiguous about whether it covers the dispute at hand." *Granite Rock Co. v. Int'l Bhd. of Teamsters,* 561 U.S. 287, 301, 130 S.Ct. 2847, 177 L.Ed.2d 567 (2010). "Absent some ambiguity in the agreement, however, it is the language of the contract that defines the scope of disputes subject to arbitration." *Waffle House,* 534 U.S. at 289, 122 S.Ct. 754.

### III. *Discussion*

■ Mr. Holcombe argues DIRECTV's motion should be denied because the arbitration agreement is unenforceable, and in any event, does not apply to this dispute. Dkt. No. [6] at 3–4. The Court first addresses whether the arbitration provision applies to Mr. Holcombe's claims.

In its motion, DIRECTV argues that Mr. Holcombe's claims fall within the broad scope of the arbitration agreement. Dkt. No. [4–1] at 11. Section 9 of DIRECTV's June 2013 Customer Agreement provides, in relevant part:

In order to expedite and control the cost of disputes, you and we agree that any legal or equitable claim relating to this

Agreement, any addendum, or your Service (referred to as a "Claim") will be resolved as follows:

. . .

[I]f we cannot resolve a Claim informally, any Claim either of us asserts will be resolved only by binding arbitration.

Dkt. No. [4–3]. DIRECTV emphasizes the "relating to" language, arguing its expansive phrasing favors inclusion of a claim absent "the most forceful evidence of a purpose to exclude" it. Dkt. No. [4–1] at 10 (quoting *AT & T Techs.*, 475 U.S. at 650, 106 S.Ct. 1415). Specifically, DIRECTV argues that the calls discussed in Plaintiff's Complaint "were made in relation to his satellite service and programming selections available from DIRECTV and a billing dispute over his March 2014 bill," and thus his claims relate to his service with DIRECTV. Dkt. No. [4–1] at 11.

Mr. Holcombe argues that his claims are not related to the Agreement, any addendum, or to his prior DIRECTV service because the calls on which his claims are based are "attempts to solicit Plaintiff to enter into a *new* 24 month term agreement for *new* services." Dkt. No. [6] at 12. Mr. Holcombe contends that DIRECTV had no reason to call him about his former account after the final bill was paid and all equipment was returned. *Id.* Reading the arbitration provision broadly enough to encompass Mr. Holcombe's claims, he argues, would yield absurd results. *Id.* at 13–14.

DIRECTV replies that Plaintiff's Complaint alleges calls made *during* his active subscription to DIRECTV and of calls made to him about renewing that subscription. Dkt. No. [9] at 6. Specifically, DIRECTV points to paragraph 15 of the Complaint, which states:

For instance, on March 31, 2014 at 5:14 PM Eastern Daylight Time and on June 2, 2014 at 5:49 PM Eastern Daylight Time, Plaintiff returned calls to DIRECTV at telephone number (302) 394–9567 and requested that the calls cease and that Plaintiff be placed on the DIRECTV do not call list.

Dkt. No. [1–1] ¶ 15.

" '[W]hether a claim falls within the scope of an arbitration agreement turns on the factual allegations in the complaint' . . . match[ed] up with the causes of action asserted." *Princess Cruise Lines*, 657 F.3d at 1220 n. 13 (quoting *Gregory v. Electro–Mech. Corp.*, 83 F.3d 382, 384 (11th Cir.1996)). The Court notes that its reading of the Complaint shows that Mr. Holcombe's claims are based on the calls he allegedly received "[b]eginning in or around May, 2014." *Id.* ¶ 13. In paragraph 15, Mr. Holcombe alleges that on specific dates, including March 31, 2014, he "returned calls to DIRECTV" asking to be placed on its "do not call" list. *See id.* ¶¶ 14–15. However, nothing in paragraph 15 allows the Court to conclude that Mr. Holcombe received an *unauthorized* call from DIRECTV in March 2014, or that any such call serves as a basis for his claims. Further, Mr. Holcombe's allegation that he cancelled his service in February or March of 2014, *id.* ¶ 11, leads to the conclusion that the alleged calls which Mr. Holcombe complains of are those received *after* his DIRECTV subscription ended. This reading is consistent with (1) other allegations in the Complaint, such as "[a]ny alleged prior relationship between the parties was terminated by Plaintiff and ceased to exist . . . when he cancelled his DIRECTV subscription," *id.* ¶ 21, and "the purpose of the call was to sell Plaintiff on a new promotion offer for [a] DIRECTV subscription," *id.* ¶¶ 13, 18; (2) Mr. Holcombe's declaration that "[a]fter terminating my service, DIRECTV began calling and mailing me seeking to solicit me to enter into a new agreement with DIRECTV," Dkt. No. [6–1] ¶ 16; and (3) Ms.

Walters' declaration that Mr. Holcombe's service ended March 14, 2014, and his final bill was paid by April 17, 2014. Dkt. No. [4–2] ¶¶ 21, 23. Because the factual allegations in the Complaint concern calls received beginning in May 2014, the Court rejects DIRECTV's assertion that Mr. Holcombe's claims are based on calls made during his active DIRECTV subscription. *See Princess Cruise Lines,* 657 F.3d at 1220 n. 13 ("[W]e consider how the factual allegations in the complaint match up with the causes of action asserted.").

Additionally, DIRECTV's characterization of the purpose of the alleged calls is inconsistent with Mr. Holcombe's factual allegations, on which the Court must rely. *Id.* Mr. Holcombe alleges he received calls about entering into a *new* agreement with DIRECTV for 24 months of service, not about "renewing" his DIRECTV subscription. Dkt. No. [9] at 6. Thus, the issue is whether calls made to Plaintiff by DIRECTV, after Plaintiff's DIRECTV account was cancelled and his final bill was paid, for the purpose of selling Plaintiff a new DIRECTV subscription, fall within the scope of the arbitration provision in DIRECTV's Customer Agreement.[1]

The arbitration provision in DIRECTV's Customer Agreement is broad, but it is not limitless. The plain language imposes the limitation that, to be arbitrable, the claim must relate to (1) the Agreement, (2) any addendum, or (3) the customer's service. As the Eleventh Circuit has noted, the phrase " 'related to' marks a boundary by indicating some direct relationship; otherwise, the term would stretch to the horizon and beyond." *Princess Cruise Lines,* 657 F.3d at 1218. In determining whether a dispute "arises out of," "relates to," or is "connected with" a contract, the court looks to whether the claim in question was "an immediate, foreseeable result of the performance of the parties' contractual duties." *Id.* at 1218–19 (quoting *Hemispherx,* 553 F.3d at 1367).

DIRECTV argues that this case is similar[2] to a Southern District of Florida case where the court found that "unsolicited commercial text messages sent to plaintiff's cellular telephone were indeed related to the parties' underlying consumer deposit account agreement and that TCPA claims related to such calls should be arbitrated." Dkt. No. [4–1] at 11 (citing *Shea v. BBVA Compass Bancshares, Inc.,* No.

---

1. DIRECTV also argues that even if Mr. Holcombe only alleges calls received after his DIRECTV service ended, such calls were still made during the time period the parties had an "existing business relationship" pursuant to the regulations. Dkt. No. [9] at 8. Specifically, DIRECTV contends that 47 C.F.R. § 64.1200(f)(5) permits "winback" calls—marketing calls to customers for 18 months after they last purchased services. *Id.* Such "winback" calls, DIRECTV argues, would be "related to" Mr. Holcombe's DIRECTV service. *Id.* The Court does not consider this argument because (1) it was raised for the first time in a reply brief, and (2) it goes to the merits of Mr. Holcombe's claims. *See Rindfleisch v. Gentiva Health Servs., Inc.,* 22 F.Supp.3d 1295, 1301 (N.D.Ga.2014) ("[F]ederal courts do not consider arguments that

are presented for the first time in a reply brief."); *AT & T Techs.,* 475 U.S. at 649, 106 S.Ct. 1415 (holding that on a motion to compel arbitration "a court is not to rule on the potential merits of the underlying claims").

2. DIRECTV's factual comparison is based on its contention that the calls in this case "were made in relation to [Plaintiff's] satellite service and programming selections available from DIRECTV and a billing dispute over his March 2014 bill." Dkt. No. [4–1] at 11. As previously discussed, *supra* pp. 7–8, this is a mischaracterization of Mr. Holcombe's allegations regarding the nature and purpose of the alleged calls. However, the Court still considers the authority cited by DIRECTV as compared to the facts alleged in the Complaint.

1:12–cv–23324–KMM, 2013 WL 869526 (S.D.Fla. Mar. 7, 2013)). In *Shea,* the plaintiff opened a personal deposit account with the defendant bank and registered to use online banking services on his cellular phone through the defendant's mobile banking application. *Shea,* 2013 WL 869526, at *2. After the plaintiff terminated his account, he received a text message from the defendant regarding an update to its mobile banking application. *Id.* at *1, 103 S.Ct. 927. The Court found that the plaintiff's TCPA claim based on this text message was subject to arbitration because (1) the plaintiff was contesting the validity of his contracts with the defendant, not just the arbitration provisions, and (2) the parties clearly and unmistakably agreed that the issue of arbitrability would be determined by an arbitration panel. *Id.* at *4, 103 S.Ct. 927. Neither of those issues is raised here.

The Court in *Shea* went on to note that *if* it were to decide the issue, it would find the plaintiff's TCPA claim within the scope of the arbitration provision based on the express language providing "[t]his arbitration provision shall survive termination of this Agreement and the closing of your Account," and that the text message regarding an update to the mobile banking application was clearly related to the plaintiff's account, since plaintiff had signed up to use that application. *Id.* at *5. Here, there is no contention that the arbitration provision in DIRECTV's Customer Agreement survives the termination of the DIRECTV account. Further, the text message in Shea—which the court found was related to the plaintiff's account—is distinct from the calls Mr. Holcombe alleges. The bank's text message provides information regarding its mobile banking services for the benefit of its account holders, whereas DIRECTV's calls attempt to sell new DIRECTV service

Similarly, because the nature of the calls made by DIRECTV assumes the *nonexistence* of a contractual relationship with the recipient, it cannot be said that such calls are an "immediate, foreseeable result of the performance of the parties' contractual duties." *Princess Cruise Lines,* 657 F.3d at 1219; *Martinez v. Carnival Corp.,* 744 F.3d 1240, 1246 (11th Cir.2014). Therefore, Mr. Holcombe's TCPA claims do not relate to the Customer Agreement with DIRECTV.

The Court notes that its conclusions do not conflict with the decision DIRECTV cites "in which a former customer's TCPA claims were compelled to arbitration under the exact arbitration provision at issue here." Dkt. No. [9] at 9 (citing *Brown v. DIRECTV, LLC,* No. CV 12–08382 DMG (Ex)., 2013 WL 3273811 (C.D.Cal. Jun. 26, 2013)); Dkt. No. [4–1] at 10. While the arbitration provision at issue in *Brown* is identical to the arbitration provision before this Court, the facts forming the basis of the TCPA claims are entirely distinct. *Brown,* 2013 WL 3273811, at *2–*3. Mr. Brown alleged that he received *collection calls* after he cancelled his DIRECTV service. *Id.* at *3. The court found that attempts to collect on an unpaid contract are related to that contract; therefore, claims based on those attempts fall within the scope of the arbitration agreement. *Id.* at *6. The *Brown* court relied on other cases compelling arbitration of TCPA claims in similar circumstances, which notably distinguish between "calls made to plaintiffs ... 'for the limited purpose of collecting money owed them' and 'not for advertising, marketing, or other purposes unrelated to the accounts.'" *Id.* (quoting *Cayanan v. Citi Holdings, Inc.,* 928 F.Supp.2d 1182, 1207 (S.D.Cal.2013) and citing *Coppock v. Citigroup, Inc.,* No. C11–1984–JCC, 2013 WL 1192632 (W.D.Wash. Mar. 22, 2013) and *McNamara v. Royal Bank of Scotland Grp., PLC,* No. 11–cv–2137–L(WVG), 2012

WL 5392181 (S.D.Cal. Nov. 5, 2012)). Here, the calls Mr. Holcombe alleges were not for collections, but were for "advertising, marketing, or other purposes" soliciting Plaintiff to enter into a new account.

Because Plaintiff's claims do not fall within the scope of the parties' arbitration agreement, the Court need not address whether that agreement is enforceable. Defendant DIRECTV, LLC's Motion to Compel Arbitration and to Dismiss [4] is **DENIED**.

**IT IS SO ORDERED** this 8th day of February, 2016.