[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-11468
_____

D.C. Docket No. 9:87-cv-08548-KMM

JUPITER WRECK, INC.,

Plaintiff - Appellant,

versus

THE UNIDENTIFIED WRECKED AND ABANDONED SAILING VESSEL, her tackle, armament, apparel, and cargo located within 1,000 yards of a point located at coordinates 26° 56.4' North Latitude, 80° 04.15' West Longitude

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(March 6, 2019)

Before WILSON, JILL PRYOR, and SUTTON,[*] Circuit Judges.

WILSON, Circuit Judge:

This appeal concerns the remains of a Spanish Galleon (Vessel) that sunk off the coast of Florida in the late seventeenth century, and currently lies about 100 yards offshore in the Jupiter Inlet.  The underlying case originated in 1987 when Jupiter Wreck, Inc. filed an in rem action seeking declaratory and injunctive relief—namely, to acquire title to the Vessel and to enjoin all parties from interfering with its salvage activities.  *See Jupiter Wreck, Inc. v. Unidentified, Wrecked & Abandoned Sailing Vessel*, 691 F. Supp. 1377, 1381 (S.D. Fla. 1988) (*Jupiter Wreck I*).  After Jupiter Wreck moved for a preliminary injunction, the court granted the motion "to the extent that [Jupiter Wreck sought] relief as against any persons or entities other than the State" but denied the motion "to the extent that [Jupiter Wreck sought] relief as against the State."  *Id.* at 1394.  The district court reasoned that the State of Florida's Eleventh Amendment immunity from suit prevented Jupiter Wreck from "gaining title or full possession of the res . . . without the consent to suit by the State."  *Id.* at 1383.  The district court retained jurisdiction to administer the distribution of the salvaged treasure on an annual basis.

---

[*] The Honorable Jeffrey S. Sutton, United States Circuit Judge for the United States Court of Appeals for the Sixth Circuit, sitting by designation.

The instant appeal arises out of the 2014 distribution.  Jupiter Wreck sought a distribution of five salvaged coins and requested a status conference.  After the district court ordered Florida—a nonparty[1]—to respond, Florida made a limited appearance to oppose the status conference.  The court granted in part the motion for distribution and denied the request for a status conference.  Jupiter Wreck appeals, arguing that Florida should not be allowed to challenge the distribution and oppose the status conference without consenting to suit.  After the benefit of oral argument, we affirm.

## I.    Facts and Procedural Background

In 1987, Jupiter Wreck filed an in rem action against the Vessel in the Southern District of Florida.  *Jupiter Wreck I*, 691 F. Supp. 1381.  Jupiter Wreck sought a declaration that it possessed valid title to the Vessel "against all claimants."  *Id.*  Florida brought an enforcement action against Jupiter Wreck in state court to enjoin it from "trespassing, damaging, or using State sovereignty submerged lands without first obtaining the required consent" from the State.  *Id.*  Jupiter Wreck removed the action to federal court, and the cases were consolidated.  *See id.*

---

[1] This appeal is unusual in that there is no Appellee other than the in rem defendant—the Vessel itself.

3

Jupiter Wreck moved for a preliminary injunction seeking to prevent Florida (and all others) from interfering with its salvaging. *See id.* The district court granted Jupiter Wreck's motion for a preliminary injunction to the extent it sought relief from entities *other than* Florida, but denied any relief Jupiter Wreck sought against Florida. *Id.* at 1394. The Eleventh Amendment, the district court reasoned, prevented Jupiter Wreck from "gaining title or full possession of the res . . . without the consent to suit by the State." *Id.* at 1383.

After the decision, Jupiter Wreck and Florida entered into an agreement—the Agreement Regarding Research and Recovery of Archaeological Material Between Florida Division of Historical Resources and Jupiter Wreck, Inc. (1990 Agreement)—that governs the parties' rights and liabilities and "recognizes the yearly distribution . . . of artifacts recovered from the [ ] vessel." At the parties' request, the district court dismissed the case and closed it for statistical purposes but retained jurisdiction to administer the annual distribution of recoveries. Jupiter Wreck and Florida have renewed the 1990 Agreement—or a slightly modified version of that agreement—each year. For more than twenty years, Jupiter Wreck and Florida peacefully abided by those agreements and the district court's annual distribution of the salvaged goods.

In 2011, Jupiter Wreck filed a motion for a preliminary injunction against Florida and a motion to reopen the case. In support of its motions, Jupiter Wreck

4

argued that *California v. Deep Sea Research, Inc.*, 523 U.S. 491, 494–95, 118 S.

Ct. 1464, 1167 (1998), constituted a change in the controlling law, and therefore

the district court should reconsider the 1988 opinion.  The district court denied

both motions, concluding that, in order to obtain the relief sought, Jupiter Wreck

would have to file a new lawsuit seeking injunctive relief against Florida because

Florida was not a party to the pending action.

In 2017, Jupiter Wreck filed a motion for distribution, asking the district

court to adjudicate the title to its 2014 recoveries.  Jupiter Wreck also filed a

motion for a status conference.  According to Jupiter Wreck, the status conference

was necessary because Florida had "impermissibly attempted to usurp" the court's

admiralty jurisdiction by interfering with its salvage rights, particularly over the

past five years.  The district court ordered Florida to respond to the motion for a

status conference.  In doing so, Florida urged the district court to reject Jupiter

Wreck's veiled attempt at relitigating the case.

The magistrate judge recommended that the district court grant the motion

for distribution in part and deny the motion for a status conference.  In its Report

and Recommendation, the magistrate judge concluded: (1) Jupiter Wreck was

entitled to the five gold coins recovered; (2) Jupiter Wreck's request for a status

conference was an attempt to relitigate the parties' respective rights to the Vessel;

and (3) the district court's 1988 and 2012 opinions should not be reconsidered

5

because Jupiter Wreck failed to establish that controlling law had changed, that new evidence had come to light, or that manifest injustice would result if the motion was denied.

Jupiter Wreck objected to the Report and Recommendation on several grounds. In its court-ordered response to the objections, Florida again noted that it was making a limited appearance and was not appearing "for any other purpose." Florida stated that it "supports and endorses the Magistrate's report and recommendations in full" because Jupiter Wreck was improperly attempting to relitigate previously resolved issues. Florida attached to its response the 1991 and 2015 iterations of its agreement with Jupiter Wreck (1991 Agreement and 2015 Agreement, respectively). Thereafter, Jupiter Wreck filed a motion to strike Florida's response. According to Jupiter Wreck, by attaching the 1991 and 2015 Agreements, "the State attempts to assert a claim of title to the *In Rem* Defendant and salvaged items." Because Florida cannot claim title while simultaneously invoking the defense of sovereign immunity, Jupiter Wreck argued, its pleadings should be stricken.

The district court rejected the motion to strike and each objection, adopting the Report and Recommendation in its entirety. Jupiter Wreck timely appealed. What exactly Jupiter Wreck is appealing, and what relief it is seeking, however, is unclear.

6

Curiously, Jupiter Wreck frames the issues on appeal as: (1) does "Florida, a non-party to the proceeding, ha[ve] standing to challenge the exclusive subject matter jurisdiction of the admiralty court which, heretofore, has exercised exclusive rights to protect Jupiter Wreck's ongoing salvage and adjudicate title on a yearly basis" and (2) does Florida have to "appear in the Federal Court proceeding and subject its rights to the decision of the Admiralty Court" in order to "object to a distribution of recovered artifacts and object to a Status Conference." Jupiter Wreck then requests that we grant the appeal and that "all pleadings filed by the State of Florida [ ] be stricken unless the State of Florida consents to this Court's *In Rem* jurisdiction and subjects its rights to decision."[2] We briefly address the issues as framed by Jupiter Wreck before considering what we believe

---

[2] Oral argument did not clarify the issues on appeal. *See, e.g.*, Oral Arg. at 2:53 (Judge Wilson asking, "[s]o, what exactly are you seeking in this case? . . . [y]ou asked the Court to strike the state's pleadings unless they consent to suit" to which Jupiter Wreck's counsel responded, "[t]hat's correct"); *id.* at 7:12 (Judge Wilson asking, "[w]hat are you seeking?" to which Jupiter Wreck's counsel responded, "[o]nly the title to what is recovered each year"); *id.* at 9:00 (Judge Wilson asking, "[w]hat exactly are you appealing?" and Jupiter Wreck counsel responding, "the order that says that the State owns the wreck because of the Research and Recovery Agreement"); *id.* at 13:13 (Judge Wilson stating, "[i]f we write an opinion, our opinion will affirm or reverse the district court's denial of your request to strike the State's pleadings. Is that what we're here to resolve this morning?" and Jupiter Wreck's counsel responding, "I believe that your decision may very well be exactly what the Supreme Court in the 9-0 decision in *Deep Sea Research* said. And that is, the Eleventh Amendment has nothing whatsoever to do with an *in rem* salvage case."); *id.* at 14:07 (Judge Wilson asking, "you're trying to bring the State into this case?" and Jupiter Wreck counsel responding, "I'm only wanting the State . . . if they want to go ahead and in anyway participate in the salvage that has been going on for thirty years, they have to come in under the rule and make a claim").

to be the issue at the heart of this appeal—whether reconsideration of the 1988 opinion is warranted.

## II.    Jurisdiction

At the outset, we must determine whether we have jurisdiction to review the district court's order denying Jupiter Wreck's motion for a status conference and motion to strike Florida's pleadings.  "To be appealable, an order must either be final or fall into a specific class of interlocutory orders that are made appealable by statute or jurisprudential exception." *CSX Transp., Inc. v. City of Garden City*, 235 F.3d 1325, 1327 (11th Cir. 2000); 28 U.S.C. §§ 1291, 1292.  A post-judgment order is deemed final if it fully resolves all issues raised in the post-judgment motion that initiated it. *See Mayer v. Wall St. Equity Grp., Inc.*, 672 F.3d 1222, 1224 (11th Cir. 2012) (per curiam).

We have jurisdiction over the instant appeal because the district court's 2018 order fully resolved all post-judgment motions that sparked it. *See id.*  While there is no final judgment on the docket in this case, the 1988 district court opinion held that Jupiter Wreck was entitled to relief against any party except Florida. *See Jupiter Wreck I*, 691 F. Supp. at 1394.  After the parties reached an agreement, the district court dismissed the case and closed it for statistical purposes.  Therefore, Jupiter Wreck's motions for distribution, for a status conference, and to strike Florida's response to its objections to the Report and Recommendation are best

viewed as post-judgment motions. *See Martinez v. Carnival Corp.*, 744 F.3d 1240, 1245 (11th Cir. 2014) ("What matters is whether the case, in all practicality, is finished. In this case, the district court not only administratively closed the case, but it also denied all pending motions as moot and compelled arbitration. The district court's order was a functionally final and appealable decision because it left nothing more for the court to do but execute the judgment."). Because the district court's order fully resolved them, we have jurisdiction.

### III.   Florida's Standing to Challenge Jurisdiction

Jupiter Wreck first argues that Florida does not have standing to challenge the district court's jurisdiction over the ongoing salvage because it is not a party to the suit. This argument fails because (1) standing concerns are not implicated here, and (2) Florida made no such jurisdictional challenge.

First, standing concerns are not implicated because Florida has not requested the federal courts to adjudicate any issue. *See Flast v. Cohen*, 392 U.S. 83, 99–100, 88 S. Ct. 1942, 1952 (1968) ("[W]hen standing is placed in issue in a case, the question is whether the person whose standing is challenged is *a proper party to request an adjudication of a particular issue* and not whether the issue itself is justiciable." (emphasis added)). Rather, Florida's filings were court-ordered responses to Jupiter Wreck's request for a status conference and Jupiter Wreck's objections to the Report and Recommendation. In these responses, Florida argued

that the court should not relitigate previously decided issues; in no way did it attempt to make a claim.

Second, Florida did not challenge the district court's subject matter jurisdiction. Jupiter Wreck seemingly construes Florida's attachments to its court-ordered filings—the 1991 and 2015 Agreements—as an attempt to evade the court's jurisdiction. Language in these agreements indicates that Florida has title to any recoveries. According to Jupiter Wreck, by referring to this language, Florida attempted to claim title of the salvaged goods, thereby divesting the district court of jurisdiction to administer the distribution of the goods. This interpretation is flawed. Florida included the attachments in support of its argument that a status conference is not necessary because all operative issues had been resolved either by the agreements or by previous district court orders.[3] Florida never suggested that the district court lacked jurisdiction.

## IV.    Florida's Ability to Object

Jupiter Wreck next argues that Florida should not be able to object to a distribution of recovered artifacts or a motion for a status conference, or to respond to an objection to the Report and Recommendation without fully consenting to suit. In support of this contention, Jupiter Wreck repeats its previous argument—Florida

---

[3] Jupiter Wreck also suggests that Florida breached one of the parties' shared agreements. *See* Oral Arg. at 10:15. If that is the case, Jupiter Wreck should bring a breach of contract claim in state court.

improperly "attempt[ed] to assert a claim of title to the *In Rem* Defendant and salvaged items" by attaching the 1991 and 2015 Agreements to its response to Jupiter Wreck's Report and Recommendation objections.  This claim, which effectively repurposes Jupiter Wreck's first argument, likewise fails.

Florida's filings in this case were a result of a court order.  Because Florida was required to file a response, whether it was a party is irrelevant.  Moreover, we disagree with Jupiter Wreck's interpretation of Florida's filings.[4]  Nothing in Florida's responses suggests that it was attempting to seek relief—in the form of title adjudication or otherwise—from the federal courts.  Rather, as mentioned, Florida referenced the 1991 and 2015 Agreements solely in support of its argument that a status conference was not necessary because all operative issues had been resolved either by the agreements or the district court.

## V.    Motion for Reconsideration

Given Jupiter Wreck's underlying motive—to acquire title to the recovered artifacts[5]—we construe this appeal as a motion for reconsideration.  The law of the case doctrine dictates that we reject such a motion.

---

[4] Even if Florida was seeking title to the Vessel or the recoveries, the district court correctly stated that "[Jupiter Wreck's] concerns regarding the Court's reliance upon any conclusions of law asserted in the State's Response are unfounded as the Court has conducted its own independent review of the issues presently before the Court."  Order Adopting R & R 5.

[5] *See* Oral Arg. at 7:12 (Judge Wilson asking, "[w]hat are you seeking?" to which Jupiter Wreck's counsel responded, "[o]nly the title to what is recovered each year"); *id.* at 13:13 (Judge Wilson stating, "[i]f we write an opinion, our opinion will affirm or reverse the district court's denial of your request to strike the State's pleadings.  Is that what we're here to resolve this

11

The law of the case doctrine prohibits a court from revisiting an issue once it has been decided in pending litigation. *See DeLong Equip. Co. v. Wash. Mills Electro Minerals Corp.*, 990 F.2d 1186, 1196–97 (11th Cir. 1993). But courts may alter prior holdings based on "a change in controlling authority, new evidence or the need to avoid manifest injustice." *Id.* at 1196. "A motion for reconsideration cannot be used to relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgment." *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 957 (11th Cir. 2009) (internal quotations omitted).

Jupiter Wreck argues that controlling law has changed since the district court's 1988 decision. In *Jupiter Wreck I*, the district court relied on *Florida Department of State v. Treasure Salvors, Inc.*, 458 U.S. 670, 102 S. Ct. 3304 (1982), in concluding that, "[b]ased on Florida's immunity from suit under the Eleventh Amendment, [Jupiter Wreck] is without any possibility of success in gaining title or full possession of the res in this forum, without the consent to suit by the State." *Jupiter Wreck I*, 691 F. Supp. at 1383. Jupiter Wreck argues that the Supreme Court's opinion in *California v. Deep Sea Research, Inc.*, 523 U.S. 491, 494–95, 118 S. Ct. 1464, 1467 (1998), directly undermined the district court's

---

morning?" and Jupiter Wreck's counsel responding, "I believe that your decision may very well be exactly what the Supreme Court in the 9-0 decision in *Deep Sea Research* said. And that is, the Eleventh Amendment has nothing whatsoever to do with an in rem salvage case."); *see also* Pl. Br. 11 (arguing that "Florida was once able to hide behind Eleventh Amendment Immunity and avoid having to intervene and make its claim to any rights in the Jupiter Wrecksite or claim title to any of Jupiter Wreck's recoveries," but *Deep Sea Research* changes that).

reasoning in *Jupiter Wreck I*.  In *Deep Sea Research*, decided ten years after *Jupiter Wreck I*, the Court held that "the Eleventh Amendment does not bar the jurisdiction of a federal court over an *in rem* admiralty action where the res is not within the State's possession."  *Id.*  Given this change in controlling law, Jupiter Wreck argues, the issue of who has title to the Vessel should be reconsidered and decided in favor of Jupiter Wreck.

Because Jupiter Wreck unsuccessfully argued that *Deep Sea Research* constitutes a change in controlling law in 2012, *see* Req. for Inj. Relief Against the Dep't of the Army Corps of Eng'rs, the State of Fla. Dep't of Envtl. Prot. and Fla. Fish & Wildlife Conservation Comm'n 6, we cannot consider the merits of its argument.  The district court was not persuaded by this argument in 2012, and Jupiter Wreck did not appeal.  Addressing the same argument here would be to improperly relitigate the issue because there has been no intervening change to the controlling law since the argument was last addressed in 2012.  *See DeLong Equip. Co.*, 990 F.2d at 1196–97.  Accordingly, we reject what we construe to be a motion for reconsideration.

**AFFIRMED.**